UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DR. RACHEL WELLNER, M.D.,

                Plaintiff,

   -against-

MONTEFIORE MEDICAL CENTER,

                Defendant.
------------------------------------------------------------------X

Docket No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

      RACHEL WELLNER, M.D. ("Plaintiff" or "Dr. Wellner"), by and through her attorneys, JOSEPH & NORINSBERG, LLC, alleges upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

**NATURE OF CASE**

      1.    This is a civil action asserting unlawful discriminatory employment actions by the Defendant, Montefiore Medical Center, through its officers, employees, managers, supervisors and agents (collectively hereinafter, "Defendant" or "Montefiore"), acting at all times mentioned herein within the scope of their authority on behalf of Montefiore, and against Plaintiff's rights guaranteed by: (i) Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq.; (ii) the New York State Human Rights Law ("NYSHRL"), Executive Law § 296 et seq.; (iii) Title 8 of the Administrative Code of the City of New York, also known as The New York City Human Rights Law ("NYCHRL"); and any other cause(s) of action that can be inferred from the facts set forth herein.

1

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12117, 29 U.S.C. § 626(c) (1), 29 U.S.C. § 2617(a) (2), and 28 U.S.C. § 1331. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all state and local law causes of action.

3. Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(ii), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b)(i), as the Defendant resides or is principally located in, and has its main center of operations within, this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. On or about November 9, 2016, Plaintiff filed a "Charge of Discrimination" against Defendant Montefiore Medical Center with the Equal Opportunity Employment Commission ("EEOC"), EEOC Charge No, 520-2017-00816, alleging violations of Title I of the Americans with Disability Act of 1990, as amended ("ADA").

5. On or about February 24, 2017, the EEOC issued Dr. Wellner a Notice of Right to Sue, based on the allegations against Defendant Montefiore Medical Center. This Complaint is being filed within 90 days of said date.

6. All other administrative prerequisites have been met.

## DEMAND FOR A JURY TRIAL

7. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

## PARTIES AND DEFINITIONS

8. At all relevant times herein, Dr. Wellner was an employee and a qualified person with a disability within the three-pronged definition of Title I of the ADA.

9. At all relevant times herein, Dr. Wellner was and is a resident of the State of New York, and of New York City, and is a "person" and an "employee" entitled to protection under the NYSHRL.

10. At all relevant times herein, Dr. Wellner was and is a resident of the State of New York, and of New York City, and is a "person" and an "employee" entitled to protection under the NYCHRL.

11. At all relevant times herein, Defendant Montefiore Medical Center was and is a hospital affiliated with Albert Einstein College of Medicine, with its principal office and place of business located at 111 East 210th Street, in the county of the Bronx, in the City and State of New York.

12. At all relevant times herein, Defendant Montefiore was and is an "employer" that "employs" more than 15 "employees" within the meaning of the ADA.

13. At all relevant times herein, Defendant Montefiore is an employer that "employs" more than four (4) "employees" within the meaning of the NYSHRL and the NYCHRL.

**PRELIMINARY STATEMENT**

14. As more fully described hereinafter, Montefiore hired Dr. Wellner in August 2015 as its Senior Most Breast Surgeon and as an Assistant Clinical Professor at the Montefiore Einstein Center for Cancer Care. In November 2015, her doctor put her on temporary disability leave after she suffered stroke-like symptoms and nearly collapsed at work, which was diagnosed to be a flare-up of chronic Lyme disease. Within a few weeks and while she was still treating, her supervisor demanded that she return to work immediately. Montefiore did this without having first acted in good faith to engage in an interactive process to determine her needs and to evaluate a reasonable accommodation. Dr. Wellner returned under that improper pressure, but within a few

3

months, a series of extremely stressful, unforeseen occurrences, described in detail below, caused her condition to worsen, and eventually put her in a position of having to ask for a second short-term leave to continue treating the Lyme disease affliction.

15. Shortly thereafter, Dr. Wellner was unlawfully terminated.

16. In response to Dr. Wellner's requests for reasonable accommodations, Montefiore adopted an intentional policy of discrimination and retaliation, which included but was not limited to: (i) arbitrarily denying, and refusing to discuss, Plaintiff's needs or her reasonable requests for an accommodation; (ii) retaliating against Plaintiff for requesting accommodations by creating a false, pretextual reason that Montefiore used to illegally terminate Dr. Wellner's employment; and (iii) failing and refusing at all relevant times to engage in a good faith interactive process that assessed and evaluated the Plaintiff's needs and the reasonableness of the accommodation requested.

## PLAINTIFF'S EDUCATIONAL BACKGROUND AND WORK HISTORY

17. Dr. Wellner graduated *magna cum laude* from Dartmouth College in 1997 with a Bachelor's of Arts degree in Spanish Literature.

18. She completed her Master's degree in Public Health from Columbia University in 2000.

19. In 2003, she graduated from the Medical School at the University of Connecticut.

20. She served a residency in general surgery at the Mount Sinai Hospital, which she successfully completed in 2008.

21. In 2008, Dr. Wellner began a fellowship at the John Wayne Cancer Institute.

22. In 2009, she also served as an assistant clinical professor at The Mount Sinai Hospital and Elmhurst Hospital Center.

23. In 2010, Dr. Wellner was appointed Director of Breast Services at the New York Eye and Ear Infirmary, Continuum Cancer Centers of New York.

24. In 2013, Dr. Wellner began a position as a surgical Oncologist at Hackensack University Medical Center.

25. In 2015, Plaintiff left Hackensack University Medical Center to take the Senior Breast Surgeon position at Montefiore Medical Center; at that time, Dr. Wellner had established a stellar reputation and was considered in the top echelons of her specialty.

26. As Senior Most Breast Surgeon, Dr. Wellner functioned as the gateway physician who saw patients immediately after they had been diagnosed with breast cancer, to develop with them an aggressive and comprehensive treatment plan.

27. In her role aforesaid, Dr. Wellner devoted herself to the welfare and personal comfort of her patients; she was well-received by them and was known as a "people person" who would talk with them personally and assure them of their inner strength and courage to meet the challenges they faced.

## PLAINTIFF'S EXTENSIVE CHARITABLE AND VOLUNTEER WORK

28. In addition to her role as a surgical Oncologist, Plaintiff has voluntarily participated in far-reaching charitable activities to help poor and deprived peoples elsewhere in the world who did not have access to and could not afford adequate oncological services.

29. Plaintiff has in the past traveled to and served personally, and in some cases started and organized projects, in volunteer capacities as a physician in Nicaragua, the Dominican Republic, India and other remote areas; she also traveled to Israel to start a Race for the Cure in Jerusalem.

5

**FACTS OF THE CASE**

30. In November of 2015, Dr. Wellner became extremely ill, experienced stroke-like symptoms, nearly collapsed at work and could not continue working.

31. Despite her desire to continue working, she was diagnosed with complications from chronic Lyme disease and was medically required to go on short term disability.

32. In or around December 2015, Plaintiff's supervisor, Dr. Ragini Mehta ("Dr. Mehta"), arbitrarily decided that Dr. Wellner's short term disability needed to end and she insisted that Dr. Wellner – who had not yet been cleared by her physician – return to work.

33. When Dr. Wellner expressed reservations about obtaining medical clearance to return to work while still being symptomatic, Dr. Mehta responded, "We don't care who clears you. Just get back to work."

34. This all occurred without Montefiore engaging in a good faith interactive process to determine Dr. Wellner's needs and to evaluate the reasonableness of the accommodation requested.

35. Dr. Wellner returned to work under the improper pressure applied by Dr. Mehta, but she remained symptomatic and communicated that fact to her supervisor and other responsible Montefiore officials.

36. Despite Dr. Wellner's continuing requests for a disability leave so that she could fully recover, Montefiore ignored federal and state law by failing to engage in a good faith interactive process to determine her needs and to evaluate the reasonableness of the requested accommodations.

37. On February 18, 2016, a series of unfortunate and bizarre events transpired and escalated, through no fault of the Plaintiff, to create a devastating impact on Dr. Wellner's

emotional and physical health, and which aggravated the continuing symptoms of Lyme disease that she had been combatting daily.

38. On that date, Dr. Wellner inadvertently parked her vehicle in a portion of a crosswalk in the Bronx, and entered a retail store to purchase items.

39. While in the store, police officers observed the parking violation, and while issuing Dr. Wellner a ticket, she exited the store to move her car.

40. The officers inappropriately escalated the matter and verbally harassed, as well as physically assaulted, Dr. Wellner before ultimately arresting her on several inflated and manufactured criminal charges, such as assault, reckless conduct and resisting arrest; she also lost her freedom for the rest of the day and through the evening, while being held in the police detention facilities.

41. The unsupported and illegal criminal charges were eventually dismissed, with Dr. Wellner paying a fine for a parking-related violation that was not a criminal offense under New York law.

42. She notified Montefiore of the case in a timely manner, and Montefiore immediately placed Dr. Wellner on administrative leave pending the outcome.

43. Dr. Wellner's criminal defense attorneys also kept Montefiore abreast of the developments in the case; during the several months until the dismissal of the charges, Montefiore, through its legal counsel, Chris Panczner ("Panczner") expressed only an interest in when Dr. Wellner could return to work.

44. In or about May 2016, Panczner told one of Plaintiff's counsel that, "We are not taking sides, we know these things get overblown. Our main concern is when Dr. Wellner will be returning to work."

45. On or about June 30, 2016, Plaintiff's counsel informed Panczner that Dr. Wellner would be receiving only a violation for parking part of her car in a crosswalk, and Panczner was pleased that Plaintiff would not have a criminal record; he did not then express any concern or words whatsoever to indicate that Plaintiff's job would be jeopardized by the original arrest or the guilty plea to a mere violation.

46. Shortly thereafter, Plaintiff's attorney informed Panczner that, prior to returning to work, Dr. Wellner intended to request a short-term disability, because she had been suffering intensive aggravation of her symptoms of Lyme disease due to the emotional stress caused by the abusive arrest, detainment and later defamatory reports published against her, in addition to the abusive letters and phone calls that she received.

47. Panczner directed Dr. Wellner to reach out to the hospital staff directly to request her accommodation.

48. On that same approximate date, Dr. Wellner made a direct plea to Dr. Mehta for an accommodation to allow her a sufficiently reasonable time to recuperate from the intensification of her Lyme disease prior to returning to work.

49. In that communication, Dr. Wellner painfully detailed to Dr. Mehta the turmoil that she underwent from the gross mishandling of the parking violation by the police; she described the physical and emotional mistreatment, and the increased symptoms of Lyme disease that resulted from that high degree of stress.

50. Dr. Mehta knew, and had expressed to Plaintiff in the past, that stress and anxiety could trigger Lyme disease flare-ups, but she nonetheless did not respond to Dr. Wellner's request for an accommodation.

51. Despite making several requests for reasonable accommodations to Dr. Mehta and other officials at Montefiore, and informing them that she was under doctor's orders to refrain temporarily from working, neither Dr. Mehta or anyone else from the hospital responded to those requests.

52. Several days later, on or about July 6, 2016, Montefiore wrongfully terminated Dr. Wellner in retaliation for her request for a reasonable accommodation, and this was done in blatant violation of the ADA, the NYSHRL and the NYCHRL.

53. On July 6, 2016, the hospital's human resources office contacted Dr. Wellner and advised her that Montefiore was terminating her employment for engaging in conduct unbecoming a physician due to her arrest by the NYPD and her pleading guilty to a violation, which its attorney had already been informed and acknowledged was not a criminal offense under New York law.

54. Thus, after learning that Dr. Wellner was requesting an accommodation and could not immediately return to work, the hospital did not at any time initiate or engage in a good faith interactive process that assessed the needs of the disabled individual and the reasonableness of the accommodation requested.

55. Instead, Montefiore acted in bad faith by creating a pretextual reason for terminating her employment, and it did this by disingenuously going back to the police incident over the parking dispute that occurred some five months earlier.

56. And by using the arrest Montefiore knew would result in violation and be sealed, Montefiore illegally discriminated against Dr. Wellner based upon her arrest.

57. The clear and expressed import of the hospital's decision to place Dr. Wellner on administrative leave when the arrest occurred on Feb. 18, 2016, was to reinstate her to her position

9

if the charges were sealed and she was effectively exonerated of the initial inflated and baseless charges.

58. Neither Montefiore's counsel, its supervisors or its officers ever indicated or even hinted in any way that Dr. Wellner could be terminated upon being exonerated of the charges; instead, the only sentiments ever expressed were regarding how long it would take to get Dr. Wellner back to work.

59. Montefiore retaliated and reversed its position only after hearing that Dr. Wellner was requesting an accommodation; the charges that were for five months tolerable to the hospital and only needed to be resolved quickly, were now fatally intolerable *after being sealed and amounted to a mere traffic violation.*

60. Montefiore wrongfully terminated Dr. Wellner, without following statutorily required procedures calling for an interactive process, at a pivotal time in her career, a career that Dr. Wellner had spent a lifetime building, simply because she had requested what would likely be a short-term disability accommodation due to very obvious stressors that had triggered an exacerbation of the symptoms that had originally afflicted her in November 2015.

61. At all relevant times, the actions of Montefiore were performed by its officers, officials, managers, agents, supervisors and employees, who were acting within the scope of their authority and within the course of their employment and/or duties, on behalf of Montefiore.

62. The aforesaid actions and omissions of Montefiore represented a misguided and cynical work culture – one that was long-established and inculcated within the hospital – that placed "numbers" and profits first, and the health and well-being of both its staff and its patients on a secondary level.

63. These and other cynical values and statistical goals motivated the officers, management and staff of the hospital to elevate cold numeric success over concern for the health or wellness of both patients and staff. Plaintiff, on information and belief, asserts that these over-hyped statistical goals motivated the hospital to try and rush her back to work, without giving due consideration to applicable federal, state and local laws prohibiting disability discrimination, when she was still treating, disabled and under doctor's orders.

64. Montefiore's acts towards Dr. Wellner were knowingly and intentionally in violation of the ADA, the NYSHRL, and the NYCHRL.

65. As a direct and proximate result of Montefiore's unlawful discriminatory and retaliatory conduct in violation of the ADA, the NYSHRL and the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm, including back pay, front pay and loss of earning capacity, for which she is entitled to an award of damages on each count.

66. As a direct and proximate result of Montefiore's unlawful discriminatory and retaliatory conduct in violation of the ADA, NYSHRL and NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages on each count.

67. As a direct and proximate result of Montefiore's unlawful, discriminatory and retaliatory behavior in violation of the ADA, NYSHRL and NYCHRL, Plaintiff has suffered an intensification and aggravation of her disabling chronic Lyme disease symptoms, both past, present and future, for which she is entitled to an award of damages on each count.

68. As a direct and proximate result of Montefiore's unlawful, discriminatory and retaliatory behavior, in violation of the ADA, NYSHRL and NYCHRL, Plaintiff has suffered other losses and is entitled to an award of damages for prejudgment interest, attorneys' fees, interest, and costs on each count.

69. With respect to all claims herein and at all relevant times, Montefiore acted intentionally, wantonly, egregiously, with malice and reckless indifference to Plaintiff's rights, in violation of the ADA, NYSHRL and NYCHRL, entitling Plaintiff to an award of punitive damages on each count.

### COUNT I AGAINST DEFENDANT – VIOLATION OF THE ADA
*Disability Discrimination, Retaliation and Failure to Accommodate*

70. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

71. The ADA prohibits discrimination in the terms, conditions, and privileges of employment due to an individual's disability.

72. Plaintiff, as described above, was at that time and at all times mentioned herein an employee and a qualified person with a disability as those terms are defined under the ADA.

73. Montefiore discriminated against Plaintiff because of Plaintiff's disability in violation of the ADA by creating a hostile work environment and failing to engage in the required good faith interactive process in response to Plaintiff's requests for a reasonable accommodation.

74. On the first violation of the ADA, which occurred in December 2015 and which is described above and incorporated herein, Montefiore improperly demanded that Plaintiff return to work even though she was still treating and had not been released by her physician.

75. At no time during this first violation, including during the initial short-term disability leave and after Dr. Wellner returned to work under pressure and prior to her recovery

from the symptoms of Lyme disease, did Montefiore respond to the requests for an accommodation by engaging in a good faith interactive process to determine the Plaintiff's needs and to evaluate and discuss the request for accommodation.

76. In the second violation of the ADA, as described above and incorporated herein, Montefiore retaliated and manufactured a false pretextual reason to terminate Dr. Wellner's employment, due to the hospital's refusal to grant a reasonable accommodation of a short-term disability to allow the Plaintiff to fully recuperate and return to work in an uncompromised state of health.

77. In the second violation, Montefiore did not at any time engage in a good faith interactive process that assessed the disabled individual's needs and the reasonableness of the accommodation requested, nor did it enter into a good faith interactive process to discuss and evaluate the requests for reasonable accommodations; instead, it arbitrarily and pretextually fired her without even considering any of the legal mandates of federal, state and local law.

78. Defendant intentionally violated Dr. Wellner's rights under the ADA, with malice and reckless indifference, and as a result, Defendant is liable for punitive damages.

**COUNT II AGAINST DEFENDANT**
*Disability Discrimination, Retaliation and Failure to Accommodate under the NYSHRL*

79. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

80. The NYSHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's disability.

81. Plaintiff, as described above, was at all times a qualified employee and a person with a disability as those terms are defined under the NYSHRL.

82. Montefiore discriminated against Plaintiff on the basis of Plaintiff's disability in violation of the NYSHRL as stated above and incorporated at length herein.

83. Montefiore failed and refused at all relevant times to engage in a good faith interactive process to determine Plaintiff's needs and to evaluate the reasonableness of the requests for accommodation.

84. Montefiore violated the NYSHRL by arbitrarily refusing to modify Plaintiff's schedule, and by pressuring her to return to work when she was still treating and under doctor's orders to not work, as stated above and incorporated here by reference.

85. Montefiore also violated the NYSHRL by creating a pretextual reason for terminating the Plaintiff's employment, as stated above and incorporated herein by reference.

86. Dr. Wellner suffered damages as a result of the Defendant's failure to accommodate including compensatory damages, punitive damages, as well as costs and attorneys' fees.

## COUNT III AGAINST DEFENDANT
*Wrongful Termination in Violation of the NYSHRL § 296(16).*

87. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

88. As previously alleged, on or about June 30, 2016, Plaintiff's counsel informed counsel for Montefiore that Dr. Wellner would be receiving only a violation for a traffic offense, and the attorney for Montefiore, Mr. Panczner, was pleased that Plaintiff would not have a criminal record.

89. On or about the same date, the Plaintiff notified her supervisor that there would be no criminal record because all the charges except a traffic violation had been dismissed.

90. Pursuant to New York Criminal Procedure Law § 160.55, the prosecution of the criminal action having been terminated by the conviction of a traffic infraction or violation, all of the records of the prosecution were either destroyed or sealed in accordance with law.

91. Notwithstanding that Montefiore's legal counsel and Plaintiff's supervisor both had notice of the termination of the criminal prosecution by conviction only of a traffic violation, Montefiore went forward after receiving that information and knowingly terminated Plaintiff's employment, illegally and in violation of the NYSHRL, § 296(16).

92. Defendant terminated Dr. Wellner because she engaged in protected activity when she sought disability leave.

93. The temporal proximity between Dr. Wellner's exercise of her rights under NYSHRL and Defendant's adverse employment action give rise to an inference of retaliation.

94. Dr. Wellner suffered damages as a result of the Defendant's discriminatory and retaliatory actions, including compensatory damages, punitive damages, and costs and attorneys' fees.

## COUNT IV AGAINST DEFENDANT
*Discrimination based upon disability, Retaliation and*
*Failure to Accommodate under the NYCHRL*

95. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

96. The NYCHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's disability.

97. Plaintiff, as described above, is an employee and qualified person with a disability as those terms are defined under the NYCHRL.

98.     Montefiore discriminated against Plaintiff on the basis of Plaintiff's disability in violation of the NYCHRL as stated above and incorporated at length herein.

99.     Montefiore failed and refused at all relevant times to engage in a good faith interactive process to determine Plaintiff's needs and to evaluate the reasonableness of the requests for accommodation, in violation of the NYCHRL.

100.    Montefiore violated the NYCHRL by arbitrarily refusing to modify Plaintiff's schedule, and by pressuring her to return to work when she was still treating and under doctor's orders to not work, as stated above and incorporated here by reference.

101.    Montefiore also violated the NYCHRL by creating a pretextual reason for terminating the Plaintiff's employment, as stated above and incorporated herein by reference.

102.    Dr. Wellner suffered damages as a result of the Defendant's discriminatory and retaliatory actions, including compensatory damages, punitive damages, and costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Dr. Rachel Wellner, demands judgment against Defendant, Montefiore Medical Center, as follows:

A.      Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with defendant, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

B.      A judgment declaring that the practices complained of herein are unlawful and in violation of the ADA, NYSHRL and the NYCHRL.

C. Permanent removal from Plaintiff's employee file all disciplinary action unlawfully taken against Plaintiff and any such references and defamatory comments anywhere else existing in the hospital's records and data bases;

D. Damages which Plaintiff has sustained as a result of Defendant's conduct, including back pay, front pay, loss of earning capacity, liquidated damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and for the physical exacerbations and aggravation of the Plaintiff's chronic Lyme disease;

E. Punitive damages to the extent authorized by law in an amount commensurate with Defendant's ability and so as to deter future unlawful conduct;

F. Awarding Plaintiff costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

G. Pre-judgment and post-judgment interest, as provided by law; and

H. Granting Plaintiff other and further relief as this Court finds necessary and proper.

Dated: New York, New York
May 10, 2017

Respectfully submitted,

JOSEPH & NORINSBERG, L.L.C.
*Attorneys for Plaintiff*
225 Broadway, Suite 2700
New York, NY 1007
Tel. (212) 791 - 5396
Fax. (516) 248 – 6027

By: _____
BENNITTA L. JOSEPH
Bennitta@employeejustice.com