UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. RACHEL WELLNER, M.D., | Case No. 17 Civ. 03479 (KPF) |
| Plaintiff, | |
| -against- | |
| MONTEFIORE MEDICAL CENTER, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

**LITTLER MENDELSON, P.C.**
Jean L. Schmidt
Emily C. Haigh
900 Third Avenue
New York, NY 10022
(212) 583-9600

*Attorneys for Defendant
Montefiore Medical Center*

TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................... 2

SUMMARY JUDGMENT STANDARD.............................................................. 4

ARGUMENT ............................................................................................... 5

I.     PLAINTIFF'S DISABILITY CLAIMS SHOULD BE DISMISSED ............................. 5

       A.     Disability Claims in General.................................................................. 5

       B.     Plaintiff Fails to Establish a Prima Facie Case ....................................... 7

              1.     Plaintiff Cannot Show that She Could Perform the Essential
                     Functions of Her Job At The Time Of Her Termination ......................... 7

              2.     Plaintiff's Request For A Few Weeks Leave Was Not A Request
                     For Accommodation For Her Disability .................................................. 8

              3.     Plaintiff Cannot Establish Causation Required For Her ADA and
                     NYSHRL Claims.................................................................................. 9

       C.     Montefiore Had A Legitimate Nondiscriminatory Reason To Terminate
              Plaintiff's Employment ..................................................................... 10

       D.     There Is No Evidence Of Pretext Or That Plaintiff's Request For A "Small
              Accommodation" Caused Her Termination.......................................... 11

II.    PLAINTIFF IS NOT ENTITLED TO ECONOMIC DAMAGES ................................. 15

III.   PLAINTIFF FAILS TO STATE A CLAIM UNDER NYSHRL § 296(16) ................... 17

TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Abdu-Brisson v. Delta Air Lines, Inc.*,
   239 F.3d 456 (2d Cir. 2001)................................................................................3

*Abrams v. Dep't of Public Safety*,
   764 F.3d 244 (2d Cir. 2014)..............................................................................12

*Anderson v. Liberty Lobby*,
   477 U.S. 242 (1986).............................................................................................4

*Blake v. Potter*,
   2007 U.S. Dist. LEXIS 72703 (S.D.N.Y. Sept. 24, 2007)..................................5

*Brady v. Wal-Mart Stores, Inc.*,
   531 F.3d 127 (2d Cir. 2008)................................................................................6

*Clark v. Jewish Childcare Ass'n, Inc.*,
   96 F. Supp. 3d 237 (S.D.N.Y. 2015)...................................................................7

*Davies v. New York City Dep't of Educ.*,
   563 F. App'x 818 (2d Cir. 2014) .......................................................................12

*DePrima v. City of New York Dep't of Educ.*,
   2014 WL 1155282 (E.D.N.Y. Mar. 20, 2014)...................................................18

*El Sayed v. Hilton Hotels Corp.*,
   627 F.3d 931 (2d Cir. 2010)..............................................................................12

*Elliot-Leach v. New York City Department of Education*,
   201 F.Supp.3d 238 (E.D.N.Y. 2016) .................................................................14

*Gentry v. East West Partners Mgmt. Club*
   816 F3d 228 (4th Cir. 2016) ...............................................................................9

*Goenaga v. March of Dimes Birth Defects Found.*,
   51 F.3d 14 (2d Cir. 1995) ....................................................................................4

*Gross v. FBL Fin. Servs., Inc.*,
   557 U.S. 167 (2009)..............................................................................................9

*Guinup v. Petr-All Petroleum Corp.*,
   786 F. Supp. 2d 501 (N.D.N.Y. 2011)................................................................8

*Hill v. New York City Housing Authority*,
   220 F.Supp.3d 499 (S.D.N.Y., 2016).................................................................14

TABLE OF AUTHORITIES
(CONTINUED)

PAGE(S)

*Howell v. Montefiore Med. Ctr.*,
  2016 WL 880373 (S.D.N.Y. Feb. 16, 2016) ...........................................................................7

*Iverson v. Verizon Comm'ns*,
  2009 WL 3334796 (S.D.N.Y. Oct. 13, 2009) .......................................................................13

*Jourdain v. SEIU Local 1199*,
  2010 WL 3069965 (S.D.N.Y. July 28, 2010) .......................................................................10

*Kendall v. Fisse*,
  149 Fed. Appx. 19 (2d Cir. 2005) .........................................................................................6

*Kennebrew v. New York City Housing Authority*,
  2002 WL 265120 (S.D.N.Y. 2002) ......................................................................................14

*Kerman–Mastour v. Fin. Indus. Regulatory Auth., Inc.*,
  814 F.Supp.2d 355 (S.D.N.Y.2011) ......................................................................................5

*Lewis v. Humboldt Acquistion Corp.*,
  681 F.3d 312(6thCir. 2012) ...................................................................................................9

*Loeffler v. Staten Island Univ. Hosp.*,
  582 F.3d 268 (2d Cir.2009) ...................................................................................................6

*Lugo v. City of N.Y.*,
  518 F. App'x 28 (2d Cir. 2013) .............................................................................................6

*Maraschiello v. City of Buffalo Police Dep't.*,
  709 F.3d 87 (2d Cir. 2013) ....................................................................................................6

*McBride v. BIC Consumer Prods. Mfg. Co.*,
  583 F.3d 92 (2d Cir. 2009) ...........................................................................................7, 15

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1972) ..........................................................................................................5, 6

*Meiri v. Dacon*,
  759 F.2d 989 (2d Cir. 1985) ..................................................................................................4

*Micari v. Trans World Airlines, Inc.*,
  43 F. Supp. 2d 275 (E.D.N.Y.), *aff'd*, 205 F.3d 1323 (2d Cir. 1999) ....................................6

*Morse v. Jetblue Airways Corporation*,
  2014 WL 2587576 (E.D.N.Y. June 9, 2014) .......................................................................16

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE(S)

*Nazario v. Promed Pers. Servs. NY Inc.*,
  2017 WL 2664202 (S.D.N.Y. June 19, 2017) .......................................................5

*Nelson v. City of New York,*
  2013 WL 4437224 (S.D.N.Y. Aug. 19, 2013).......................................................6

*Nieblas-Love v. N.Y. City Hous. Auth.*,
  165 F. Supp. 3d 51 (S.D.N.Y. 2016)....................................................................5

*Parker v. Sony Pictures Entm't, Inc.*,
  260 F.3d 100 (2d Cir. 2001)................................................................................4

*Roge v. NYP Holdings, Inc.*,
  257 F.3d 164 (2d Cir. 2001)..............................................................................10

*Rumsey v. Ne. Health, Inc.*,
  89 F. Supp. 3d 316 (N.D.N.Y. 2015), *aff'd*, 634 F. App'x 318 (2d Cir. 2016) ......................13

*Saulpaugh v. Monroe Cmty. Hosp.*,
  4 F.3d 134 (2d Cir. 1993) ..................................................................................16

*Schwapp v. Town of Avon*,
  118 F.3d 106 (2d Cir. 1997)................................................................................5

*Scott v. Harris*,
  550 U.S. 372 (2007)............................................................................................5

*Serwatka v. Rockwell Automation, Inc.*,
  591 F.3d 957 (7th Circ. 2010)............................................................................9

*Shannon v. New York City Transit Auth.*
  332 F.3d 95 (2d Cir. 2003).................................................................................7

*Sheng v. M&TBank Corp.*,
  848 F.3d 78 (2d Cir. 2017)................................................................................15

*Trent v. Town of Brookhaven*,
  966 F. Supp. 2d 196 (E.D.N.Y. 2013) ...............................................................13

*Tse v. New York Univ.*,
  190 F. Supp. 3d 366 (S.D.N.Y. 2016).............................................................16,17

*United States v. Brennan*,
  650 F.3d 65 (2d Cir. 2011*)*..................................................................................6

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE(S)

*Widomski v. State Univ. of New York (SUNY) at Orange*,
    933 F. Supp. 2d 534 (S.D.N.Y. 2013), *aff'd*, 748 F.3d 471 (2d Cir. 2014) ..............................9

*Ya-Chen Chen v. City Univ. of N.Y.*,
    805 F.3d 59 (2d Cir. 2015)...........................................................................................5

**Statutes**

42 U.S.C. § 12111(8) ...............................................................................................7, 15

ADA ...................................................................................1, 5, 6, 7, 8, 9, 10, 13, 15, 16

ADEA ...........................................................................................................................9

FMLA ........................................................................................................................14

N.Y. Exec. Law § 296.................................................................................................17

**Other Authorities**

Fed. R. Civ. P. 56(a) ...................................................................................................4

Defendant Montefiore Medical Center ("Defendant" or "Montefiore" or the "Hospital") submits this memorandum of law in support of its Motion for Summary Judgment seeking dismissal of all of Plaintiff Rachel Wellner's ("Plaintiff" or "Dr. Wellner") claims.

## PRELIMINARY STATEMENT

On February 18, 2016, Plaintiff was arrested in Midtown Manhattan after she refused to accept a parking ticket.  During the incident, Plaintiff hit a police officer in the leg with her car as she attempted to flee.  She was pursued by the police and arrested and taken into custody.  At some point during the incident, Plaintiff stated to police that she was the "real hero, not the police," she "had patients who were dying," and she "did not accept the summons."   Eye witnesses reported that the police were trying to write Plaintiff a ticket and Plaintiff was screaming that she was being harassed for no reason.   These events were photographed, videotaped and heavily reported on in the news.   The articles often highlighted Plaintiff's employment and association with Montefiore.  Plaintiff admits that her conduct, as reported in the press, was prejudicial to the best interests of Montefiore.

Despite Plaintiff's admittedly inappropriate conduct on February 18, 2016, and failure to clear her name in any way over the next four months, Plaintiff claims her conduct and resulting publicity damaging to Montefiore was not the reason Montefiore terminated her. Rather, she alleges Montefiore terminated her on July 5, 2016, because she asked for the "small accommodation" of a few additional weeks of leave, in violation of the ADA, the NYSHRL and the NYCHRL.[1] Plaintiff also alleges that her termination violated NYSHRL Section 296(16). Plaintiff's allegations are meritless. The undisputed facts establish that Montefiore terminated

---

[1] At the Parties' pre-motion conference on July 17, 2018, Plaintiff's counsel stated to the Court that Plaintiff is not pursuing a claim for damages for anything that happened prior to her arrest in February 2016, including any claims related to her leave in November – December 2015. Declaration of Jean L. Schmidt Ex. 10 at pg. 30-31. Thus, as Plaintiff's counsel stated at the conference, Plaintiff's only claims before the Court are based on her termination in July 2016. *Id.* at 31.

Plaintiff because of her egregious conduct and the irreparable damage to Montefiore and to Plaintiff's ability to fulfill her responsibilities as a surgeon at Montefiore, and that Plaintiff's request for a few weeks of leave played no role in that decision.  The undisputed facts also establish that Plaintiff cannot state a claim under NYSHRL Section 296(16)  Thus, the Court should grant Montefiore's motion and dismiss Plaintiff's claims in their entirety.

## STATEMENT OF FACTS

In 2015, Dr. Robert Michler, Chairman of the Department of Surgery at Montefiore, interviewed, recruited, and hired Plaintiff to join his team of surgeons. (56.1 ¶ 2). Plaintiff began her employment with Montefiore on August 5, 2015. (56.1 ¶ 4). At that time, Plaintiff's reputation was excellent and she was determined to build a mega-center at Montefiore within her specialty.  (56.1 ¶ 1).  Dr. Michler hired her to provide not only excellent care, but also attract patients and develop the breast cancer practice at Montefiore.  (56.1 ¶ 2).

On February 18, 2016, six months after starting her employment, Plaintiff was arrested in New York City after she hit a police officer with her car while attempting to flee a parking ticket stating to police "I'm the hero" and "I don't have time for this, I have to get to the hospital." (56.1 ¶ 8).  She was apprehended and taken into custody.  (56.1 ¶ 8).  Dr. Robert Michler became aware of Plaintiff's conduct the day news broke of her arrest. (56.1 ¶ 6). He thought Plaintiff's egregious conduct jeopardized the confidence and trust of Montefiore patients and that Plaintiff's employment should be terminated.   (56.1 ¶ 11).   After discussion among Montefiore's top officials, Montefiore decided to place Plaintiff on paid administrative leave in order to allow her time to resolve her criminal charges and clear her name in the public eye.  (56.1 ¶ 15).  While Dr. Michler believed that the damage to Montefiore and the faculty and to Plaintiff's ability to carry out her responsibilities was irreparable, he understood that Montefiore wanted to give Plaintiff the opportunity to clear her name. (56.1 ¶ 16).

For the next four months, Plaintiff and her criminal attorneys repeatedly communicated to Montefiore that there would be a quick resolution of the criminal charges, exculpatory evidence of Plaintiff being assaulted would come to light, and that the public opinion about Plaintiff would change.  (56.1 ¶¶ 18-31).

On June 24, 2016, Plaintiff's criminal defense attorney mentioned to Montefiore's General Counsel, Christopher Panczner, that Plaintiff was undergoing psychiatric care as a result of the altercation with the police and that she wanted to go on short term disability leave for a few weeks. (56.1 ¶¶ 31-35). In response to Mr. Myers' reference to Plaintiff's desire to take short term disability leave, Mr. Panczner told him that Plaintiff should reach out to hospital staff. (56.1 ¶ 31-35). Plaintiff did not do this. (56.1 ¶ 35). She never reached out to hospital staff to apply for short-term disability leave until after she was terminated.  (56.1 ¶ 35).

On June 29, 2016, Montefiore converted Plaintiff's leave to unpaid because her criminal proceeding was still unresolved. (56.1 ¶ 36). Then on June 30, Plaintiff wrote to Montefiore and stated that she had just learned that Montefiore would be taking her off of paid leave. (56.1 ¶ 37). Plaintiff thanked Montefiore for its generosity over the past four months and asked whether or not she would have a job once the criminal charges were resolved. (56.1 ¶¶ 37-38). She stated "If termination is what is to be expected, I do need to make arrangements."

Because Plaintiff needed to know Montefiore's decision regarding her employment, a call was scheduled for the next day, Friday, July 1, 2016, with Mr. Panczner, Dr. Michler, Mr. Cabrera and Robyn Ruderman, then Montefiore's Labor and Employee Relations counsel. (56.1 ¶ 41).

At that point, the media reports regarding Plaintiff and her assaulting a police officer, which had permanently damaged Plaintiff's reputation, had not changed, and despite their

promises, neither Plaintiff nor her attorneys ever provided Montefiore with any exculpatory evidence. (56.1 ¶¶ 48-50). Montefiore had given Plaintiff more than four months to provide information that showed that she had not engaged in the conduct described by the media and the police. (56.1 ¶ 42). Given that Plaintiff was going to plead guilty, it was clear that there was never going to be anything in the public about the incident except the very damaging description of Plaintiff's inappropriate conduct. (56.1 ¶ 43). Following the conference call on July 1, 2016, Dr. Michler understood that he had the authority to move forward with his decision to termination Plaintiff's employment based on Montefiore's consideration of these factors. (56.1 ¶ 44). Plaintiff was notified of her termination on the next business day, July 5, 2016. (56.1 ¶ 51).

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when there is no genuine issue of material fact and the undisputed facts warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).  A defendant must only point to a plaintiff's absence of proof, at which point the plaintiff must "designate specific facts" and offer "concrete evidence" from which a reasonable juror could return a verdict in her favor.  *Parker v. Sony Pictures Entm't, Inc.,* 260 F.3d 100, 111 (2d Cir. 2001); *Anderson,* 477 U.S. at 256.

Plaintiff cannot survive summary judgment by resting her case on conclusory statements, speculation, unsubstantiated allegations, or merely colorable evidence.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (stating that "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.").  The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts."

*Scott v. Harris*, 550 U.S. 372, 380 (2007).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id.*

"A plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment."  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).  In fact, "the Court of Appeals has gone out of [its] way to remind district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'"  *Blake v. Potter*, 2007 U.S. Dist. LEXIS 72703, at *16 (S.D.N.Y. Sept. 24, 2007) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)).  The Second Circuit has also stated that "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).  This is just such a case.

## ARGUMENT

## I.   PLAINTIFF'S DISABILITY CLAIMS SHOULD BE DISMISSED

### A.   Disability Claims in General

Claims of disability discrimination under the ADA, the NYSHRL, and the NYCHRL are analyzed under the burden-shifting scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972).  *Nieblas-Love v. N.Y. City Hous. Auth.*, 165 F. Supp. 3d 51, 72–73 (S.D.N.Y. 2016); *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (citations omitted);  *Kerman–Mastour v. Fin. Indus. Regulatory Auth., Inc.,* 814 F.Supp.2d 355, 366 (S.D.N.Y.2011) ("In analyzing whether a plaintiff has raised a triable issue of fact as to whether her termination was motivated by discriminatory animus under the NYCHRL, the courts have continued to employ the familiar burden-shifting analysis of [McDonnell Douglas].")   While the

NYCHRL is reviewed "independently from and 'more liberally' than" federal or state discrimination claims, *Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268, 278 (2d Cir.2009), it still requires a showing of some evidence from which discrimination can be inferred. *Lugo v. City of N.Y.*, 518 F. App'x 28, 30 (2d Cir. 2013).

Under this framework, the plaintiff bears the initial burden to prove her *prima facie* case. *Maraschiello v. City of Buffalo Police Dep't.,* 709 F.3d 87, 92 (2d Cir. 2013) (quoting *Mathirampuzha v. Potter,* 548 F.3d 70, 78 (2d Cir. 2008). To establish a *prima facie* case of disability discrimination under the ADA, the NYSHRL, or the NYCHRL, a plaintiff must establish that (1) the employer is subject to the statues, (2) that the plaintiff suffers from a disability within the meaning of the statues, (3) that she was otherwise qualified to perform the essential functions of the job with or without a reasonable accommodation, and (4) that she was subject to an adverse employment action because of her disability. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008); *Nelson v. City of New York, 2013 WL 4437224, at *6 (S.D.N.Y. Aug. 19, 2013) (NYSHRL); Kendall v. Fisse*, 149 Fed. Appx. 19, 21 (2d Cir. 2005) (summary order) (NYCHRL).

If a plaintiff establishes a prima facie case, the burden then shifts to the defendant to establish a legitimate non-discriminatory reason for its actions. *United States v. Brennan,* 650 F.3d 65, 93 (2d Cir. 2011*)*. "If the defendant sets forth a legitimate non-discriminatory reason, it 'will be entitled to summary judgment [] unless the plaintiff can point to evidence that reasonably supports a finding' that the reason merely serves as a pretext for discrimination." *Howell v. Montefiore Med. Ctr.,* 2016 WL 880373, at *5 (S.D.N.Y. Feb. 16, 2016) (quoting *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1225-26 (2d Cir. 1994) and *James v. New York Racing Ass'n,* 233 F.3d 149, 154 (2d Cir. 2000)).

### B.      Plaintiff Fails to Establish a *Prima Facie* Case

1.      *Plaintiff Cannot Show that She Could Perform the Essential Functions of Her Job At The Time Of Her Termination.*

Plaintiff cannot establish a *prima facie* claim because it is undisputed that Plaintiff was unable to perform the essential functions of job at the time of her termination, even with her alleged requested accommodation.

To demonstrate that she is qualified under the ADA, NYSHRL, and NYCHRL, Plaintiff must prove that she can perform the "essential functions" of her job with or without a reasonable accommodation.  42 U.S.C. § 12111(8); *Shannon v. New York City Transit Auth.* 332 F.3d 95, 99-100 (2d Cir. 2003); *McBride v. BIC Consumer Prods. Mfg. Co.,* 583 F.3d 92, 97 (2d Cir. 2009) (The plaintiff "bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment."); *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 250 (S.D.N.Y. 2015). Here, Plaintiff's sworn statements and those of her doctors establish that she was not able to work, with or without accommodation, at the time of her termination.  (56.1 ¶¶ 57-73).

Plaintiff and her doctors have consistently affirmed that prior to Plaintiff's termination Plaintiff could not return to practicing medicine.  (56.1 ¶¶ 57-73).  Plaintiff stated on her disability benefits application to the Social Security Administration ("S.S. Admin."), under penalty of perjury: "I became unable to work because of my disabling condition on February 19, 2016."  (56.1 ¶¶ 72-73).  Plaintiff stated the same to Montefiore's insurer.  (56.1 ¶¶ 63-64). Plaintiff's doctors submitted paperwork to Montefiore's insurer to support her claim for disability benefits confirming that before she was terminated on July 5, 2016, Plaintiff was unable to work with or without accommodation due to her PTSD. (56.1 ¶¶ 60-62, 70-71).  There is no evidence contradicting these statements.  (56.1 ¶ 71).

Plaintiff conceded that although she thought it would have been good for her to return to work in July 2016, no doctor ever cleared her to return to work after she suffered PTSD in February 2016. (56.1 ¶ 71). Without an affirmative showing from Plaintiff that she was medically cleared to return to work with or without accommodation at the time of her termination, her claims fail as a matter of law. *Micari v. Trans World Airlines, Inc.*, 43 F. Supp. 2d 275, 279–80 (E.D.N.Y.), (dismissing the Plaintiff's ADA claims because to permit a plaintiff to swear under oath that he is disabled and unable to work with or without accommodation in one forum and then allow them to take the contrary position in another forum would be to "abuse the judicial process through cynical gamesmanship.") *aff'd*, 205 F.3d 1323 (2d Cir. 1999); *Guinup v. Petr-All Petroleum Corp.*, 786 F. Supp. 2d 501, 512 (N.D.N.Y. 2011) (holding that judicial estoppel prevents a plaintiff from asserting she was capable of performing the essential function of her job after she has already stated the opposite to the Social Security Administration).

Thus, the Court should dismiss Plaintiff's disability claims because her prior sworn statements and those of her doctors establish that she was not a qualified individual.

2. *Plaintiff's Request For A Few Weeks Leave Was Not A Request For Accommodation For Her Disability*.

Plaintiff claims that her attorney's statement to Montefiore's General Counsel Christopher Panczner that she was undergoing psychiatric care and that she wanted to go on short-term disability constituted a request for accommodation for her disability.[2] Her claim is meritless. Assuming, *arguendo*, that Plaintiff's attorney's statement put Montefiore on notice that she had a disability, it is undisputed that Plaintiff's request for a few weeks leave was not a request for an accommodation for her alleged disability or in any way related to her alleged

---

[2] Plaintiff concedes that she never personally asked Montefiore for accommodation and that her attorney's comment to Montefiore is the only evidence of a "request for accommodation" prior to her termination. (56.1 ¶ 35).

disability.  Plaintiff testified that all she was seeking was "a few weeks for [her criminal] charges to be dropped," to get a car, to get her affairs in order, and make sure she was ready to go back to work.  (56.1 ¶ 35).  Montefiore clearly had no obligation to provide Plaintiff with additional time off for her to get a car or to wait until her criminal charges were dropped.  Thus, Plaintiff's failure to accommodate claim must be dismissed.

> 3. *Plaintiff Cannot Establish Causation Required For Her ADA and NYSHRL Claims*

The Supreme Court in *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167 (2009) held that under the ADEA a plaintiff must prove that age was the "but-for" cause of the challenged adverse employment action.  Following *Gross*, Courts have concluded that the ADA and NYSHRL, like the ADEA, also have a "but-for" standard because all of the statutes contain the same "because of" language.  *Widomski v. State Univ. of New York (SUNY) at Orange,* 933 F. Supp. 2d 534, 546 (S.D.N.Y. 2013), ("This Court agrees that the ADEA and ADA 'because' language is similar, implying that their respective burdens of persuasion are likely equivalent and thus casting doubt on the continued applicability of the pre-Gross mixed motives ADA case law.") *aff'd*, 748 F.3d 471 (2d Cir. 2014).  While the Second Circuit has yet to rule on the proper standard, the Fourth, Sixth and Seventh Circuits have all held that under the same analysis applied by the Supreme Court in *Gross*, a plaintiff asserting a discrimination claim under the ADA must show that his or her disability was the "but for" cause of the challenged employment action. *Gentry v. East West Partners Mgmt. Club*, 816 F3d 228 (4th Cir. 2016)*; Lewis v. Humboldt Acquistion Corp.*, 681 F.3d 312, 321(6thCir. 2012); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th  Circ. 2010).

Montefiore submits that the proper standard to be applied to Plaintiff's ADA and NYSHRL claims in this case is the "but-for" standard. Because the undisputed evidence establishes that Plaintiff cannot meet that standard, her claims should be dismissed.

Plaintiff cannot satisfy the "but-for" standard because she believes that Montefiore had a "dual" reason for her termination. (56.1 ¶¶ 54-56). She testified that Montefiore's legitimate nondiscriminatory reason, *i.e.*, her conduct as reported in the press, made up "60%" of the motivation behind her termination, while her request for a "small accommodation" was only 40% of the reason. (56.1 ¶ 55). Thus, by Plaintiff's own admission, she cannot prove that "but-for" her alleged request for a few weeks of leave, she would not have been terminated.

In sum, for the reasons set forth above, Plaintiff cannot establish a *prima facie* claim and her claims should be dismissed.

Even assuming, *arguendo*, that Plaintiff can establish a *prima facie*, case, Montefiore is entitled to summary judgment because the undisputed evidence establishes that Montefiore had a legitimate, nondiscriminatory reason to terminate her employment and Plaintiff has not established that the reason was a pretext for discrimination of that the real reason was her request for a few weeks of leave.

### C.    Montefiore Had A Legitimate Nondiscriminatory Reason To Terminate Plaintiff's Employment

Montefiore has met its burden of demonstrating a nondiscriminatory basis for terminating Plaintiff's employment. An employer who believes in good faith that an employee has committed wrongdoing has legitimate grounds to terminate her employment. *e.g., Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 169 (2d Cir. 2001); *Jourdain v. SEIU Local 1199,* 2010 WL 3069965, at *8 (S.D.N.Y. July 28, 2010). Here, there is no dispute that Plaintiff's conduct as reported in the press constituted grounds for Plaintiff's termination. (56.1 ¶¶ 13-14). Plaintiff

herself concedes that her conduct as described in the press was prejudicial to the best interests of Montefiore which was grounds for termination under her contract.  (56.1 ¶ 14).

Moreover, it is undisputed that the in Montefiore's view, Plaintiff's egregious conduct and the corresponding news reports and publicity jeopardized the confidence and trust of its patients, and injured and soiled the reputation of Montefiore, its faculty, and all of the people that work at Montefiore.  (56.1 ¶¶ 11-13, 45-50).  The faculty was embarrassed by Plaintiff's conduct and arrest, and doctors did not want to be associated with her.  (56.1 ¶ 46).  In addition, it was Montefiore's view that if Plaintiff had been allowed to return, her practice would have been nonexistent.  (56.1 ¶ 47).  What was always going to be in the public was the description of Plaintiff, a Montefiore breast surgeon, assaulting a police officer, resisting arrest and making offensive and inappropriate comments, and the photos of her being led away in handcuffs in her Montefiore.  (56.1 ¶¶ 11-13, 45-50).  Thus, no patient was going to agree to have Plaintiff operate on them and no doctor would refer her patients.  *Id*.  Moreover, she could not be a role model for other faculty or persons in training, *i.e.*, medical students and residents, and her credibility was permanently damaged.  *Id*.  In short, there was no way Plaintiff could fulfill her responsibilities as a breast surgeon at Montefiore.  *Id*.

Thus, the undisputed evidence establishes that Montefiore had a legitimate nondiscriminatory reason to terminate Plaintiff's employment.

### D.   There Is No Evidence Of Pretext Or That Plaintiff's Request For A "Small Accommodation" Caused Her Termination

Plaintiff first argues that Montefiore's reason for termination is a pretext because if her conduct was truly the basis for her termination, Montefiore would have terminated her in February.  Plaintiff's attempt to use Montefiore's goodwill and due diligence as evidence of pretext fails. Montefiore cannot be faulted for giving Plaintiff time to resolve her criminal

charges and repair her reputation, particularly when Plaintiff and her attorney continually asserted to Montefiore that the events of February 18 were simply a "series of unfortunate and bizarre events" and that they had exculpatory evidence showing that it was the police officers who assaulted Plaintiff. (Complaint ¶¶ 37-41).[3]   The event that triggered Montefiore proceeding with her termination was not, as Plaintiff claims, her request for leave, but rather Plaintiff's request to Montefiore on June 30, 2016, that she be told whether or not she was going to be terminated.   At that point, because the damage done by Plaintiff's conduct to herself and to Montefiore had not been repaired and because that damage made it impossible for Plaintiff to fulfill her duties as a breast surgeon, Montefiore proceeded with her termination.

Second, Plaintiff claims that pretext is established by the fact that Montefiore terminated her on July 5, just a few days after her attorney's statement on June 24, 2016 that Plaintiff wanted to take a few weeks of leave.   Her claim fails.   The law in this Circuit is clear that temporal proximity does not establish pretext.   *Abrams v. Dep't of Public Safety,* 764 F.3d 244, 254 (2d Cir. 2014) ("[T]emporal proximity alone is not enough to establish pretext in this Circuit."); *Davies v. New York City Dep't of Educ.,* 563 F. App'x 818, 820–21 (2d Cir. 2014) ("We have been clear that temporal proximity between protected activity and an adverse employment action, alone, is insufficient to establish pretext"); *El Sayed v. Hilton Hotels Corp.,* 627 F.3d 931, 932–33 (2d Cir. 2010) (dismissing a claim of retaliatory discharge because temporal proximity, without more, is not enough to raise a triable issue of fact); *Iverson v. Verizon Comm'ns,* 2009 WL 3334796 (S.D.N.Y. Oct. 13, 2009).   *Iverson* is instructive, as the facts are analogous.   The plaintiff in *Iverson* was suspended pending an investigation of a customer complaint.   During his suspension he disclosed his disability to his employer. Approximately a week after disclosing his disability, his employer terminated him.   The court

---

[3] Notably, to this date no evidence has ever surfaced supporting Plaintiff's version of events.

granted summary judgment to the employer and dismissed the plaintiff's ADA, NYSHRL, and NYCHRL claims, holding that "[m]erely claiming temporal proximity between the disclosure of disability and termination [] is not enough to show that Verizon's reasons for termination were a pretext for discrimination." *Id.* at *2, *5-6; *Trent v. Town of Brookhaven,* 966 F. Supp. 2d 196, 206 (E.D.N.Y. 2013) (same).  Plaintiff, like the plaintiff in *Iverson*, cannot establish pretext based solely on the fact that she asked for leave or disclosed a disability while she was on administrative leave and then termination followed.

Further, Plaintiff's argument that the temporal proximity establishes pretext is defeated because there was clearly an intervening event eliminating any causal link between her attorney's comment and her termination.  On June 30 Plaintiff sent an email in which she thanked Montefiore for its generosity over the past four months and asked "If termination is what is to be expected, I do need to make arrangements." Montefiore's July 1 conference call the next day to discuss Plaintiff was clearly in response to Plaintiff's email and her request for a decision regarding her employment, and explains the timing of the termination.  Plaintiff's June 30 email eliminates any causal link Plaintiff attempts to create in establishing causation.  *Rumsey v. Ne. Health, Inc.,* 89 F. Supp. 3d 316, 336 (N.D.N.Y. 2015), ("an intervening event between the protected activity and the adverse employment action may defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference.") *aff'd*, 634 F. App'x 318 (2d Cir. 2016), as corrected (Jan. 29, 2016).

Third, although Plaintiff's administrative leave was not punitive, the case law regarding situations in which discipline of the employee begins before the employee engages in protected activity is applicable to the facts at hand.  In those situations, any inference that the termination was caused by the protected activity is destroyed because termination was already in the works.

*Elliot-Leach v. New York City Department of Education,* 201 F.Supp.3d 238, 244–45 (E.D.N.Y. 2016) (when the employee's disciplinary issues began before the protected activity it suggests that the employee was terminated for reasons unrelated to the protected activity.); *Kennebrew v. New York City Housing Authority,* 2002 WL 265120, at *17 (S.D.N.Y. 2002) (retaliation claim fails since the alleged adverse act was already in the works prior to the protected activity) (collecting cases).  Here, Plaintiff was placed on leave immediately after her arrest and was told not to contact any patients or co-workers. This establishes that Montefiore was already considering terminating her employment months before her attorney stated that Plaintiff wanted to take a few weeks of leave. Further, Dr. Michler believed that Plaintiff should be terminated when he learned of her conduct on February 18, 2016. This also establishes that the discussions regarding termination had begun and continued up until her termination.  *Hill v. New York City Housing Authority,* 220 F.Supp.3d 499, 506 (S.D.N.Y., 2016) (dismissing the plaintiff's FMLA retaliation claim in light of the fact that the supervisor had recommended termination before she requested FMLA leave). Significantly, Plaintiff's statement that she was not sure she would have a job after her criminal case was closed demonstrates that  herself understood that her job was in jeopardy and that Montefiore might very well terminate her employment.

Any claim by Plaintiff of pretext is also refuted by Montefiore's decisions regarding her paid leave.  The undisputed facts establish that Montefiore placed Plaintiff on paid leave for approximately four months, and then transitioned Plaintiff to unpaid leave on June 29. Significantly, Montefiore converted her leave to unpaid after learning that she planned to ask for two more weeks of leave. If Montefiore was going to terminate Plaintiff in response to her desire to take leave it would not have bothered to convert her leave to unpaid on June 29.  Any other conclusion is nonsensical.  Montefiore would have simply terminated her on June 29.  It also

defies logic to think that Plaintiff's request for an additional few weeks would motivate Montefiore to terminate Plaintiff after Montefiore had given her four months of paid leave.  In sum, no rational fact finder could conclude that Montefiore terminated Plaintiff because she asked for a few weeks of leave, particularly given the undisputed evidence that Plaintiff's conduct made it impossible for Montefiore to continue to employ her.

Thus, Plaintiff cannot show that Montefiore's legitimate nondiscriminatory reason is false and that her plan to ask for two more weeks of leave was the true reason for her termination. Montefiore is therefore entitled to summary judgment and her disability claims should be dismissed.[4]

## II.      PLAINTIFF IS NOT ENTITLED TO ECONOMIC DAMAGES

Plaintiff seeks damages in the form of back pay, front pay, and loss of earning capacity as a remedy for her alleged wrongful termination.  (Complaint, Prayer for Relief, ¶ D).  As we next show, Plaintiff is not entitled to any economic damages because the undisputed evidence establishes that from February 19, 2016 until the present, she has been unable to work because she suffers from PTSD which resulted from her altercation with the police and subsequent arrest. (56.1 ¶¶ 57-73).

As a general rule, "[a]wards of back pay are intended to place an injured plaintiff in the same position he or she would have been in but for the defendant's acts of discrimination." 13 N.Y.Prac., Employment Litigation in New York § 8:2.  A plaintiff is therefore entitled to recover only the back pay they actually lost as a direct result of the defendant's wrongful employment practice.  *Id.*

---

[4] To the extent Plaintiff alleges that Montefiore failed to engage in the interactive process, (Complaint ¶¶14, 16, 34, 36, 54, 60, 73, 75, 77, 83), that claim also fails as a matter of law because failure to engage is not an independent claim. *Nazario v. Promed Pers. Servs. NY Inc.,* 2017 WL 2664202, at *7 (S.D.N.Y. June 19, 2017). ("[Employer]'s alleged failure to engage in an interactive process with respect to finding Plaintiff an accommodation [] does not constitute an independent violation of the ADA."); *Sheng v. M&TBank Corp.,* 848 F.3d 78, 86 (2d Cir. 2017); *McBride v. BIC Consumer Prod. Mfg. Co.,* 583 F.3d 92, 100 (2d Cir. 2009).

Here, Plaintiff stated on her disability benefits application to the Social Security Administration ("S.S. Admin."), under penalty of perjury: "I became unable to work because of my disabling condition on February 19, 2016." (56.1 ¶¶ 57-73). Plaintiff stated the same to Montefiore's insurer. (56.1 ¶¶ 57-73). Plaintiff's doctors submitted paperwork to Principal Life Insurance confirming that before she was terminated on July 5, 2016, she was unable to work with or without accommodation due to her PTSD. (56.1 ¶¶ 57-73). Thus, Montefiore cannot be liable for a period of time when Plaintiff was unable to work because of her PTSD caused by her arrest. *Saulpaugh v. Monroe Cmty. Hosp.,* 4 F.3d 134, 145 (2d Cir. 1993) (excluding back pay during the time in which the plaintiff was disabled and unable to work). In *Saulpaugh,* the Second Circuit held that while ordinarily a plaintiff is entitled to back pay from the date of termination to the date of judgment, this is not so when, as here, the plaintiff would not have been entitled to her salary because she was disabled and unable to work. *Id. See also Morse v. Jetblue Airways Corporation,* 2014 WL 2587576 (E.D.N.Y. June 9, 2014) (denying back pay and front pay for alleged violations of ADA, NYSHRL and NYCHRL during periods where plaintiff was unable to work due to disability).

In her response to Montefiore's pre-motion letter to the Court, Plaintiff argued that Montefiore, and not her disability, caused the alleged harm to Plaintiff and therefore she is entitled to damages. (Dkt 37, pg. 3). Plaintiff's argument is meritless.

In support of her argument, Plaintiff relies upon *Tse v. New York Univ.*, 190 F. Supp. 3d 366, 372 (S.D.N.Y. 2016). However, *Tse* is not applicable to this case because the facts are entirely different. In *Tse*, there were no records from the plaintiff and medical professionals conclusively stating that the plaintiff was unable to work. Moreover, in *Tse,* the employee was able to work with accommodation until the accommodation was taken away by the employer.

16

Here, Plaintiff's sworn statements and her doctors submissions establish that Plaintiff has been unable to work since February 19, 2016 to due to her PTSD caused by her altercation with the police.  (56.1 ¶¶ 57-73).  Further, unlike *Tse,* from February 19, 2016 to the present, no doctor has released Plaintiff to return to work with or without accommodation.  (56.1 ¶¶ 57-73).  In sum, it is undisputed that Plaintiff has been unable to work, with or without accommodation, since February 19, 2018.  Thus, Plaintiff has not suffered any financial loss as a result of the termination of her employment, and the Court should dismiss her claim for economic damages.

## III.   PLAINTIFF FAILS TO STATE A CLAIM UNDER NYSHRL § 296(16)

Plaintiff claims Montefiore wrongfully terminated her on the basis of her arrest record in violation of NYSHRL § 296(16).  (Count III).  Her claim must be dismissed because she cannot state a claim under NYSHRL § 296(16).

Under NYSHRL § 296(16), it is unlawful for an employer to act adversely to an employee for "any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual."  N.Y. Exec. Law § 296 (McKinney).  Here, Plaintiff was charged were pending against Plaintiff on July 5, 2016, when Plaintiff was informed of her termination.  (56.1 ¶¶ 51-53).  They were not resolved until July 12, 2016, when Plaintiff pleaded guilty to disorderly conduct.  *Id*.  Thus, the undisputed material facts establish that Plaintiff does not state a claim under NYSHRL § 196(16) because her criminal accusation was pending at the time of her termination.

Moreover, there is nothing unlawful about Montefiore's consideration of Plaintiff's conduct reported in the press which led to her arrest in making the determination to terminate her.  "Once an employer or licensing agency lawfully discovers an arrest record 'it [is] permissible to consider the independent evidence of the conduct leading to the criminal charges."

*DePrima v. City of New York Dep't of Educ.,* 2014 WL 1155282, at *9 (E.D.N.Y. Mar. 20, 2014) (dismissing the plaintiff's § 296(16) claim.) "[T]here is nothing illegal nor unfair about an employer investigating employee conduct and terminating the employee based on substantial evidence of misconduct, even though criminal charges have been dismissed." *Id.* Thus, Montefiore's reliance upon Plaintiff's underlying conduct reported in the press, and the lack of information disproving that conduct, in making the decision to terminate her employment was not a violation of NYSHRL § 296(16).

In sum, the undisputed evidence establishes that Plaintiff cannot state a claim under Section 219(16), and thus her claim must be dismissed.

## CONCLUSION

Based on the undisputed facts, judgment is warranted for Montefiore as a matter of law. There are no facts or concrete evidence from which a reasonable juror could return a verdict in favor of Plaintiff. Accordingly, Montefiore respectfully requests that this Court dismiss all of Plaintiff's claims.

Date:   August 31, 2018
        New York, New York

/s/ Jean L. Schmidt

Jean L. Schmidt (jschmidt@littler.com)
Emily C. Haigh (ehaigh@littler.com)
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022.3298
212.583.9600

Attorneys for Defendant
Montefiore Medical Center

18