UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DR. RACHEL WELLNER, M.D.,

                              Plaintiff,

                -v.-

MONTEFIORE MEDICAL CENTER,

                              Defendant.

17 Civ. 3479 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

On July 5, 2016, Montefiore Medical Center ("Montefiore," the "Hospital," or "Defendant") terminated the employment of Dr. Rachel Wellner ("Dr. Wellner" or "Plaintiff"). In the months leading up to the termination, Plaintiff was the subject of extensive negative publicity regarding her arrest and interactions with New York City police officers on February 18, 2016. What exactly occurred between Plaintiff and the officers remains the subject of active litigation in this District. *See Wellner* v. *Davodian*, No. 16 Civ. 7032 (JGK). Here, however, the Court is asked to address a separate question: whether that incident and the resulting press coverage were the causes of Plaintiff's termination, as Montefiore claims, or whether the termination was the result of Plaintiff's request for reasonable medical accommodations for her disabilities, as she claims. Plaintiff asserts that Montefiore's reasons for her termination were pretextual and brings claims for disability discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. §§ 12111-12117, 12131-12165, 12181-12189, 12201-12213 (the "ADA"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (the "NYSHRL"); and the New York

City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-131 (the

"NYCHRL"). Defendant moves for summary judgment on all of Plaintiff's

claims. For the reasons set forth below, Defendant's motion is granted in part

and denied in part.[1]

## BACKGROUND[2]

### A.    Factual Background

#### 1.    The Parties

Dr. Rachel Wellner is a resident of New York, who was employed as a

breast cancer surgeon at Montefiore from August 5, 2015, through July 5,

2016. (Compl. ¶ 9; Def. 56.1 ¶¶ 1-4). Montefiore Medical Center is a hospital

---

[1]    Among Plaintiff's claims was a claim under NYSHRL § 296(16) for wrongful termination on the basis of her arrest record. (Compl. ¶¶ 87-94). Defendant moves for summary judgment on this claim (Def. Br. 17-18), and Plaintiff does not oppose this request (Pl. Opp. 25 n.7). Accordingly, Defendant's motion for summary judgment on this claim is granted.

[2]    The facts set forth in this Opinion are drawn from the Complaint ("Compl." (Dkt. #1)) as well as the parties' submissions in connection with the instant motion, including Defendant's Local Rule 56.1 Statement ("Def. 56.1" (Dkt. #47)), Plaintiff's counterstatement ("Pl. 56.1 Opp." (Dkt. #55)), and Defendant's reply statement ("Def. 56.1 Reply" (Dkt. #56)). References to individual deposition transcripts, declarations, and affidavits are referred to using the conventions "[Name] Dep.," "[Name] Decl.," and "[Name] Aff.," respectively. For ease of reference, Defendant's opening brief is referred to as "Def. Br." (Dkt. #48); Plaintiff's opposition brief as "Pl. Opp." (Dkt. #53); and Defendant's reply brief as "Def. Reply" (Dkt. #57).

Citations to a party's 56.1 Statement incorporate by reference the documents cited therein. Where facts stated in a party's 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true. *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a corresponding numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent ... controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

affiliated with the Albert Einstein College of Medicine, with its principal office and place of business located in the Bronx, New York. (Compl. ¶ 11).

### 2. Plaintiff's 2016 Arrest and Defendant's Reaction

In 2015, Dr. Robert Michler, Chairman of the Department of Surgery at Montefiore, interviewed and hired Plaintiff for a position at the Hospital. (Def. 56.1 ¶ 2). The following year, on February 18, 2016, Plaintiff was arrested by New York City police officers. (*Id.* at ¶ 5). Plaintiff's arrest was the subject of discussion in the news media, and on February 19, 2016, the *New York Post* published an article describing the incident. (*Id.* at ¶¶ 5, 8). The article described Plaintiff's arrest as stemming from a dispute between her and police officers over a parking ticket and contained quotations from alleged police sources and bystanders criticizing Plaintiff's behavior while being ticketed and arrested. (*Id.* at ¶ 8). The article described the Plaintiff as having "rammed" a police officer's leg with her car as she attempted to drive away from the scene, and attributed to her the statement, "I'm the hero; the cops are not!" (*Id.*). Plaintiff contests the truth of the news reports. (Pl. 56.1 Opp. ¶ 8).

Whatever the truth of the incident, Plaintiff's supervisors read the article after it was published. (Def. 56.1 ¶ 6). Dr. Michler and Montefiore's General Counsel, Christopher Panczner, discussed the article after receiving the news of Plaintiff's arrest. (*Id.* at ¶ 7). Dr. Michler came to the conclusion that Plaintiff needed to be terminated after reviewing the press reports. (*Id.* at ¶ 11; *see also* Michler Dep. 20:1-4). Mr. Panczner believed that Plaintiff's contract

allowed for termination, under a clause addressing "conduct which, in the judgement of Montefiore, is deemed prejudicial to the best interests of Montefiore." (Def. 56.1 ¶ 13; *see also* Panczner Dep. 39:2-40:9). On February 18 and 19, 2016, Mr. Panczner and Dr. Michler met with Dr. Phillip Ozuah, Montefiore's Chief Operating Officer, and Alfredo Cabrera, Montefiore's Chief Human Resources Officer, after which Defendant placed Plaintiff on administrative leave. (Def. 56.1 ¶ 15; *see also* Panczner Decl. ¶ 7).

### 3. Plaintiff's Administrative Leave and Defendant's Investigation

On February 22, 2016, Dr. Michler and Dr. Ragini Mehta, Administrator for the Department of Surgery, called Plaintiff and informed her that she was being placed on administrative leave effective immediately. (Pl. 56.1 Opp. ¶ 18). On February 29, 2016, Plaintiff received a letter from Montefiore stating that she was on paid leave pending the completion of an investigation into the arrest. (Def. 56.1 ¶ 19; *see also* Panczner Decl., Ex. 3). On March 15, 2016, Plaintiff sent a letter in response thanking Montefiore, expressing her belief that criminal proceedings arising from the arrest would result in a favorable disposition, and promising to keep Dr. Michler informed of developments. (Def. 56.1 ¶ 20).

On April 7, 2016, Plaintiff's criminal defense attorney, Alan Futerfas, sent a letter to Dr. Michler, in which he requested a meeting to discuss purported evidence of police misconduct and a potential dismissal of the criminal action. (Def. 56.1 ¶ 21). On April 21, 2016, Mr. Panczner spoke with

Mr. Futerfas by telephone regarding the case, and Mr. Futerfas explained that he would meet with Mr. Panczner and share a video of Plaintiff being assaulted by a police officer along with other exculpatory evidence. (*Id.* at ¶ 22). Prior to the scheduled meeting date, Plaintiff terminated Mr. Futerfas as her attorney and hired Matthew Myers in his stead. (*Id.* at ¶¶ 23-24).

On April 21, 2016, Mr. Myers and Mr. Panczner spoke about Plaintiff's criminal case. (Pl. 56.1 Opp. ¶ 26). On April 29, 2016, Mr. Panczner informed Montefiore that Plaintiff intended to plead guilty to a disorderly conduct violation and not a criminal offense. (*Id.*). Mr. Panczner informed his colleagues that Mr. Myers had asked how such a plea would affect Plaintiff's employment, and that he had informed Mr. Myers that this discussion was premature. (Panczner Decl., Ex. 7). On June 6, 2016, Mr. Panczner and Mr. Myers spoke again; Mr. Myers stated that he would present the exculpatory video of a police assault to the Bronx County District Attorney and again inquired how the plea might affect Plaintiff's employment. (Pl. 56.1 Opp. ¶ 26). Mr. Panczner "reiterated [Montefiore's] need to have this reach a resolution or [Montefiore] would reconsider paying [Plaintiff] pending the outcome of the case. (Panczner Decl., Ex. 8).

Mr. Panczner and Mr. Myers spoke again the week of June 20, 2016. (Def. 56.1 ¶ 30). The parties dispute the substance of the last call, which occurred on June 24, 2016. (*See* Def. 56.1 Reply ¶ 31). In an email summary of the call to his colleagues, Mr. Panczner wrote that he understood that

Plaintiff would plead to a violation on July 13, 2016, and that he "had previously told [Mr. Myers] that if the criminal case [were] not resolved [the week of June 20, 2016], [Montefiore] would need to reconsider continuing payment of [Plaintiff's] salary pending the outcome of the case." (Panczner Decl., Ex. 9). Mr. Panczner also reported that Plaintiff was "undergoing psychiatric care as a result of the altercation and that she want[ed] to go on short-term disability." (*Id.*). Mr. Panczner informed Mr. Myers that Plaintiff should reach out to Hospital staff regarding an accommodation. (Panczner Decl. ¶ 20; *see also* Complaint ¶ 47).

**4. Plaintiff's Unpaid Leave and Termination**

On June 29, 2016, Montefiore sent Plaintiff a letter stating that Montefiore had placed her on paid leave with the expectation that her criminal matter would be resolved quickly, and because it remained unresolved, her leave was being converted from paid to unpaid. (Def. 56.1 ¶ 36; *see also* Panczner Decl., Ex. 10). On June 30, 2016, Plaintiff sent an email to Dr. Mehta in which she provided her version of the events leading to her arrest and inquired as to her job status. (Def. 56.1 ¶ 37; *see also* Panczner Decl., Ex. 11). Plaintiff stated that before she decided on a disposition of her criminal case, she needed to know the Hospital's plan: "If termination is what is to be expected, I do need to make arrangements. If your plan is to try to reintegrate me, it will be a slow but hopefully seamless process. I am still very much in the process of healing from this trauma." (*Id.*). She asked Dr. Mehta to shed

6

light on her situation.  (*Id.*).  Dr. Mehta provided the email to Dr. Michler; Mr. Panczner also reviewed the email.  (Def. 56.1 ¶¶ 39, 40).

On July 1, 2016, Mr. Panczner, Dr. Michler, Mr. Cabrera, and Robyn Ruderman, then Montefiore's Labor and Employee Relations counsel, held a conference call regarding Plaintiff.  (Def. 56.1 ¶ 41).  Dr. Michler testified that he believed after the July 1 conference call that he had the authority to fire Plaintiff for the arrest and the subsequent media reporting on her conduct.  (*Id.* at ¶¶ 44-45; *see also* Michler Dep. 159:18-160:5).  Dr. Michler testified that he had received complaints from staff and that he believed Plaintiff's conduct had been detrimental to Montefiore.  (Def. 56.1 ¶¶ 46-47).  On July 5, 2016, Montefiore informed Plaintiff that her employment had been terminated.  (*Id.* at ¶ 51).  On July 12, 2016, Plaintiff pleaded guilty to disorderly conduct.  (*Id.* at ¶ 52.

### 5. Plaintiff's Disability Applications

After her termination, Plaintiff applied for short-term disability benefits through Defendant.  (Def. 56.1 ¶ 57).  In her application, her treating physician, Dr. Alexander Bardey, stated that Plaintiff suffered a traumatic event on February 18, 2016, and that she remained unable to return to work. (*Id.* at ¶¶ 60-62).  Dr. Bardey further stated that beginning in May 2016, he advised Plaintiff to restrict employment activities, and he did not advise a return even to part-time work.  (*Id.*).  He was unable to assess when Plaintiff might be able to return.  (*Id.*).  Plaintiff stated in this application, which she

signed on July 7, 2016, that she was unable to perform all duties and activities of employment. (*Id.* at ¶ 63). Plaintiff subsequently applied to the Social Security Administration for Disability Insurance Benefits. (*Id.* at ¶ 72). In that application, signed on July 7, 2017, Plaintiff stated that she became disabled on February 19, 2016, and remained unable to work. (*Id.* at ¶ 73).

**B.      Procedural Background**

Plaintiff commenced this action on May 10, 2017. (Dkt. #1). On July 28, 2017, Defendant filed an answer. (Dkt. #13). On November 13, 2017, the Court ordered discovery to commence, and discovery concluded on June 28, 2018. (Dkt. #24, 35). On July 9, 2018, Defendant requested leave to file a motion for summary judgment, and on July 17, 2018, the Court granted this request and set a schedule for briefing. (Dkt. #36, 38).

Defendant filed its motion for summary judgment and supporting papers on August 31, 2018. (Dkt. #43-48). Plaintiff filed her opposition to Defendant's motion, along with supporting papers, on November 19, 2018. (Dkt. #53-55). Defendant filed the reply in support of its motion on December 18, 2018. (Dkt. #56-57).

## DISCUSSION

**A.      Applicable Law**

**1.      Summary Judgment Under Fed. R. Civ. P. 56**

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986);
*Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).[3]  A genuine
dispute exists where "the evidence is such that a reasonable jury could return
a verdict for the nonmoving party."  *Fireman's Fund Ins. Co.* v. *Great Am. Ins.
Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks
and citation omitted).  A fact is "material" if it "might affect the outcome of the
suit under the governing law[.]"  *Anderson*, 477 U.S. at 248.

While the moving party "bears the initial burden of demonstrating 'the
absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers
Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Catrett*, 477
U.S. at 323), the party opposing summary judgment "must do more than
simply show that there is some metaphysical doubt as to the material facts,"
*Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see
also Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).  Rather, the non-
moving party "must set forth specific facts showing that there is a genuine
issue for trial."  *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins.*

---

[3]     The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary
judgment standard from a genuine "issue" of material fact to a genuine "dispute" of
material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting
that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue'
becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment
determination.").  This Court uses the post-amendment standard, but continues to be
guided by pre-amendment Supreme Court and Second Circuit precedent that refers to
"genuine issues of material fact."

*Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). "Though [the Court] must accept as true the allegations of the party defending against the summary judgment motion ... conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak* v. *City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted) (citing *Matsushita*, 475 U.S. at 587; *Wyler* v. *United States*, 725 F.2d 156, 160 (2d Cir. 1983)); *accord Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

## 2. Disability Discrimination and Retaliation

### a. The ADA and the NYSHRL

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to ... discharge of employees[.]" 42 U.S.C. § 12112(a). The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice ... [f]or an employer ... because of an individual's ... disability ... to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a).

In her opposition, Plaintiff clarifies that she brings claims for disability discrimination and retaliation under both statutes. (Pl. Opp. 21 n.5). Plaintiff correctly notes that discrimination and retaliation are separate claims that require separate analyses. (*Id.* (citing *Treglia* v. *Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) ("A plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful."))). However, Plaintiff's claims largely overlap. Both rest on Defendant's alleged decision to respond to her request for accommodation with termination.

Discrimination claims under the ADA and the NYSHRL are governed by the burden-shifting framework set forth in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-04 (1973). *See Widomski* v. *State Univ. of N.Y. (SUNY) at*

*Orange*, 748 F.3d 471, 476 (2d Cir. 2014); *see also Vega* v. *Hempstead Union Free School Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).[4]  Under this framework,

> the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  If the plaintiff does so ... the defendant [must] articulate some legitimate, nondiscriminatory reason for its action.  If such a reason is provided, plaintiff ... may still prevail by showing ... that the employer's determination was in fact the result of [discrimination].

*Holcomb* v. *Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (internal quotation marks and citations omitted).

To establish a *prima facie* case of discrimination under the ADA or NYSHRL, a plaintiff must show [i] that [her] employer is subject to the statute; [ii] that she is disabled within the meaning of the statute or perceived to be so by her employer; [iii] that she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and [iv] that she suffered an adverse employment action because of her disability.  *See Jacques* v. *DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004); *see also Nelson* v. *City of New York*, No. 11 Civ. 2732 (JPO), 2013 WL 4437224, at *6 (S.D.N.Y. Aug. 19, 2013) (applying this test to claims under the NYSHRL).  To establish retaliation, the *prima facie* case is similar: a plaintiff must demonstrate that:

---

[4]    The New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which is to render the standard for claims closer to the standard under the NYCHRL.  *See* A8421/S6577 (as amended by S6594/A8424).  These amendments were signed into law by Governor Andrew Cuomo on or about August 12, 2019.  Significantly, however, these amendments only apply to claims that accrue on or after the effective date of October 11, 2019.

"[i] she engaged in protected activity, [ii] the employer was aware of this activity, [iii] she was subjected to an adverse employment action against her, and [iv] a causal connection existed between the alleged adverse employment action and her protected activity." *McGuire-Welch* v. *House of the Good Shepherd*, 720 F. App'x 58, 62 (2d Cir. 2018) (summary order) (citing *Weixel* v. *Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)).

An adverse employment action is defined as one that is "materially adverse with respect to the terms and conditions of employment," and it includes termination. *Flieger* v. *Eastern Suffolk BOCES*, 693 F. App'x 14, 17 (2d Cir. 2017) (summary order) (quoting *Davis* v. *N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015)). Protected activities include requests for reasonable accommodations. *Id.* at 18. Causation can be shown through indirect proof "that the protected activity was closely followed in time by adverse action." *Clark* v. *Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 262 (S.D.N.Y. 2015) (internal quotation marks and citation omitted).

Once a plaintiff establishes a *prima facie* case of discrimination or retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. *See Treglia,* 313 F.3d at 721. "If … the defendant … points to evidence of a legitimate, nonretaliatory reason for the challenged employment decision, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder

to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Cifra* v. *G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001).

### b. The NYCHRL

Claims brought under the NYCHRL must be reviewed "independently from and 'more liberally' than their federal and state counterparts." *Loeffler* v. *Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (quoting *Williams* v. *N.Y. City Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)); *see generally Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (noting that courts must "constru[e] the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible'" (quoting *Albunio* v. *City of N.Y.*, 16 N.Y.3d 472, 477-78 (2011))).  Under the NYCHRL, a plaintiff's burden is less because she is not required to show an adverse employment action and need only "show differential treatment — that she was treated 'less well' — because of a discriminatory intent." *Mihalik*, 715 F.3d at 110.

To demonstrate retaliation under the NYCHRL, Plaintiff must show that she "took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action[.]" *Mihalik*, 715 F.3d at 112 (citations omitted).  While the drafters of the NYCHRL expressed a preference for claims to be resolved by juries, *see Williams*, 872 N.Y.S.2d at 39, "summary judgment will still be appropriate where a plaintiff does not adduce sufficient evidence of

a link between her termination and a discriminatory motive and where she fails to rebut convincing evidence that her employer treated her differently for legitimate business reasons[.]" *Kerm Mastour* v. *Fin. Indus. Regulatory Auth., Inc.*, 814 F. Supp. 2d 355, 367 (S.D.N.Y. 2011).

### 3.    Summary Judgment in Employment Discrimination Cases

This Court has previously noted that the Second Circuit has emphasized "the need for caution about granting summary judgment to an employer in a discrimination case where ... the merits turn on a dispute as to the employer's intent." *Lyman* v. *New York & Presbyterian Hosp.*, No. 11 Civ. 3889 (KPF), 2014 WL 3417394, at *7 (S.D.N.Y. July 14, 2014) (citing *Gorzynski* v. *JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (internal quotation marks and citation omitted)).  "Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination."  *Id.* (citing *Schwapp* v. *Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (internal quotation marks and citations omitted)).

### B.    Analysis

#### 1.    Summary Judgment Is Denied as to Plaintiff's Disability Discrimination Claims

##### a.    Triable Issues Exist Concerning Plaintiff's *Prima Facie* Showing of Disability Discrimination

The Court begins with Plaintiff's disability discrimination claims.  For purposes of this motion, the parties do not dispute that Plaintiff is disabled

under the ADA, the NYSHRL, and the NYCHRL, and that Defendant is an employer covered by these statutes. Instead, Defendant argues that Plaintiff cannot demonstrate a *prima facie* case of disability discrimination because (i) Plaintiff cannot demonstrate that she was able to perform the essential functions of her job at the time of termination (Def. Br. 7-8); and (ii) Plaintiff cannot establish causation for her claims, as her disability was not the cause of her termination (*id.* at 9-10). The Court addresses, and rejects, each of these arguments.

### i. Genuine Disputes of Material Fact Exist as to Plaintiff's Ability to Perform the Duties of Her Job

To demonstrate that Plaintiff was not able to perform the duties of her job as a physician, Defendant relies heavily on the statements provided in Plaintiff's applications for disability insurance to both Montefiore and the Social Security Administration. (*See* Def. Br. 7-8 ("Plaintiff stated on her disability benefits application to the Social Security Administration, under penalty of perjury: 'I became unable to work because of my disabling condition on February 19, 2016.' Plaintiff stated the same to Montefiore's insurer." (internal citations omitted))). The Court does not find that these statements establish that Plaintiff was unable to work with a reasonable accommodation.

The Supreme Court has held that an ADA discrimination case can coexist with a claim for disability benefits, provided that the plaintiff provides "an explanation of any apparent inconsistency with the necessary elements of

16

an ADA claim." *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 807 (1999). "To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" *Id.*[5] The Second Circuit has held that before applying judicial estoppel to factual claims in ADA cases, "a court must carefully consider the contexts in which apparently contradictory statements are made to determine if there is, in fact, direct and irreconcilable contradiction." *DeRosa* v. *Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010). Here, the Court finds that Plaintiff has provided sufficient explanation for the inconsistency to survive summary judgment.

Plaintiff made the statements in her disability applications after her termination, and a reasonable jury could find that they do not contradict her prior statement that she could return to work with a reasonable accommodation. On June 30, 2016, Plaintiff informed the Hospital that she could be reintegrated with an appropriate accommodation: "If your plan is to try to reintegrate me, it will be a slow but hopefully seamless process. I am still very much in the process of healing from this trauma." (Panczner Decl.,

---

[5]     Notably, one of the two decisions that Defendant cites on this issue, *Micari* v. *Trans World Airlines, Inc.*, 43 F. Supp. 2d 275, 279-80 (E.D.N.Y. 1999), predates the Supreme Court's decision in *Cleveland*. (*See* Def. Br. 8).

Ex. 11). The email clearly suggests that Plaintiff foresaw returning to work with appropriate recovery time as a realistic possibility. Plaintiff's statements regarding total disability came after she was allegedly denied this accommodation.

This case is analytically similar to *Rodal* v. *Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 119 (2d Cir. 2004). Dr. Rodal also claimed total disability shortly after termination but sued for disability discrimination, and the Second Circuit held:

> [I[f the evidence is viewed in the light most favorable to Dr. Rodal, the statements can be construed without conflict to reflect the evolution of events between May and July 1999. In this action, Dr. Rodal states that if his May 1999 request for a scheduling accommodation had been granted, he could have continued to work as a Group anesthesiologist, performing the essential duties of that job. But, as he stated in the New York action, with no such accommodation having been granted by July 1999, he could no longer carry out the duties of that position and, thus, found it necessary to take disability leave.

*Id.* The circumstances here are nearly identical. Viewed in the light most favorable to Plaintiff, the record indicates that she requested an accommodation in June 2016, so that she could continue to work as a surgeon, performing the essential duties of that job. However, once that accommodation was denied, she could no longer carry out the duties of that position and found it necessary to take disability leave. To be sure, a jury can examine the contrasting statements that Plaintiff has made in determining

whether she can demonstrate that she was able to perform the duties of her position in July 2016, but the Court cannot foreclose the claim based on statements made after the intervening event of Plaintiff's termination.

### ii. Genuine Disputes of Material Fact Exist as to Whether Plaintiff's Disability Was the But-For Cause of Her Termination

Before discussing the evidence on the causal prong, the Court must first identify the proper standard under the ADA, which is a subject of dispute between the parties. (Def. Br. 9-10; Pl. Opp. 23-24). The Second Circuit has recently clarified that the relevant standard in employment discrimination cases brought under the ADA is a but-for standard. *See Natofsky* v. *City of New York*, 921 F.3d 337, 349 (2d Cir. 2019) ("We conclude that 'on the basis of' in the ADA requires a but-for causation standard."). Therefore, to demonstrate disability discrimination, Plaintiff must show that she would have retained her position but for her disability. *Id.* at 351. However, even under this stricter standard, the Court finds that a reasonable jury could conclude that Defendant would not have terminated Plaintiff but for her request for accommodation in June 2016.

To begin, Defendant points to several pieces of evidence that strongly indicate that Plaintiff's arrest, and not her disability, was the cause of her termination. (Def. Br. 9-10). Dr. Michler has testified that he first sought Plaintiff's termination from February 18, 2016. (Def. 56.1 ¶ 11). Plaintiff was ordered not to return to the Hospital and not to contact patients or staff.

19

(Michler Decl., Ex. 1).  Plaintiff points to no evidence suggesting that anyone at Montefiore argued in favor of bringing her back to staff at any time between her arrest and her termination.  Furthermore, Plaintiff herself has testified that a major factor in her termination was the conduct of the police.  (*See* Wellner Dep. 289:14-18 (Q.:  "What proportion [of your damages from lost employment] is on Montefiore in your view?  A.:  I'll say 60/40 police to Montefiore.").  The record is clear that Dr. Wellner's termination was first contemplated immediately after her arrest, and that Dr. Michler sought her termination throughout the period following her arrest.  (Def. 56.1 ¶ 16).

Despite this evidence, the Court cannot conclude as a matter of law that Montefiore elected to terminate Plaintiff with no consideration of her disability.  "'[B]ut-for' causation does not require proof that [discrimination] was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the [discriminatory] motive."  *Zann Kwan* v. *Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).  If Dr. Michler alone made the decision to fire Plaintiff, there would be no genuine dispute of fact that Plaintiff's encounter with the police would have led to her termination regardless of her disability.  However, as Plaintiff notes, the facts make clear that Dr. Michler was unable to terminate Plaintiff in February or April of 2016.  (*See* Pl. Opp. 12-13 (citing Michler Dep. 28:5-6, 109-10, 87:18-19)).  There was a shift in Montefiore's position in early July, and Dr. Michler then understood he had the authority to terminate Plaintiff.  (*Id.* at 110:18-20).  And during that

20

time, Montefiore learned of Plaintiff's intent to request to seek disability. (Panczner Decl., Ex. 9).

The Court cannot exclude the possibility that a jury could find that absent Plaintiff's request for accommodation, she would not have been terminated. Defendant asserts that Dr. Michler was the sole individual responsible for making the decision on Plaintiff's termination. (Def. Reply 5-7). But Plaintiff correctly notes that the record casts doubt on this explanation. (Pl. Opp. 12-13). Dr. Michler initially understood that he lacked authority to terminate Plaintiff in February, and he only gained the authority to do so after Montefiore received Plaintiff's request for accommodation. At this stage of the litigation, the Court must view the evidence in the light most favorable to Plaintiff. Accordingly, the Court concludes that a reasonable jury could examine Montefiore's shifting position between February and July and conclude that the precipitating event for Plaintiff's termination was not her increasingly-less-recent arrest, but rather her more-recent request for accommodation. "[T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation ... through temporal proximity." *Vega*, 801 F.3d at 91 (quoting *Zann Kwan*, 737 F.3d at 846).

Accordingly, the Court concludes that Plaintiff has adequately met her burden, and that genuine disputes of material fact preclude summary judgment on Plaintiff's *prima facie* case for disability discrimination under the ADA and the NYSHRL, and thus under the less-stringent NYCHRL.

### b.  Defendant Has Provided a Nondiscriminatory Reason for Firing Plaintiff

In response, Defendant proffers a nondiscriminatory reason for Plaintiff's termination, namely, her February 18 arrest and the resulting negative publicity regarding her conduct. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves* v. *Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr.* v. *Hicks,* 509 U.S. 502, 509, (1993)). Defendant has provided substantial evidence that Plaintiff's termination resulted from nothing more than her own misconduct and failure to clear her name.

As Defendant explains, Plaintiff was arrested, and the arrest received substantial news coverage. (Def. 56.1 ¶¶ 11-14). Employees had complained about Plaintiff and questioned whether Montefiore would allow her to return. (*Id.* at ¶ 46). Defendant placed Plaintiff on paid leave immediately after the arrest and limited her contact with patients and staff. (*Id.* at ¶¶ 17-20). Throughout Plaintiff's criminal proceedings, Defendant's employees remained in touch with her attorneys for updates regarding her case. (*Id.* at ¶¶ 18-35). Defendant placed her on unpaid leave on June 29, 2016, and upon Plaintiff's request regarding a decision as to her future, Defendant terminated her. (*Id.* at ¶¶ 39-44). No evidence had emerged by that point clearing Plaintiff of misconduct or rebutting the early press accounts of execrable at the time of her arrest.

On this account of Plaintiff's arrest, the subsequent investigation, and lack of exoneration, there was a clear, legitimate reason for her termination. Plaintiff's arrest and resulting misconduct had left her discredited and reflected poorly on the Hospital, and the Hospital made the decision to terminate her on this basis. There is sufficient evidence of this account in the record to satisfy Defendant's burden of production.

### c. Triable Issues Exist Concerning Whether Defendant's Proffered Nondiscriminatory Reason Was Pretextual

Having provided a nondiscriminatory rationale, the burden shifts again to Plaintiff to demonstrate "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Lyman*, 2014 WL 3417394, at *14 (quoting *Dep't of Cmty. Affairs* v. *Burdine*, 450 U.S. 248, 253 (1981)).

The Court finds that genuine disputes remain as to whether Plaintiff's February 18 arrest and the subsequent news coverage were the actual and only reasons for Plaintiff's termination. Defendant argues that Plaintiff's highly publicized arrest made it impossible for her to perform her job and embarrassed her employer. (Def. Br. 10-11). It argues that Plaintiff provided no evidence outside of temporal proximity that would cast doubt on this nondiscriminatory rationale for termination and, further, that temporal proximity is insufficient to establish pretext. (*Id.* at 12). The Second Circuit has indeed held that "temporal proximity of events may give rise to an inference

of [discrimination] for the purposes of establishing a *prima facie* case …, but without more, such temporal proximity is insufficient to satisfy [Plaintiff's] burden to bring forward some evidence of pretext." *El Sayed* v. *Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). However, the Court concludes that the lack of clarity in the record regarding the precise decisionmaker and the precise timing of Plaintiff's termination allow for an inference of pretext.

The Court agrees with Plaintiff that Defendant has not provided a plausible explanation for Dr. Michler's sudden authority to fire Plaintiff. Defendant asserts that Dr. Michler merely realized he had the authority in July to terminate Plaintiff, but does not specify how he gained that authority or what event removed prior objections. The Court notes that Defendant's description of events provides no greater clarity. (*See* Def. Reply 6 ("Dr. Michler testified that he 'assumed' Dr. Ozuah, had signed off on Plaintiff's termination because on the July 1 conference call Dr. Michler 'recognized that [he] had the authority and approval to terminate [Plaintiff].'" (citing Michler Dep. 110:21-111:3)). The Hospital changed its position in the July 1 conference call, but there is no clarity in the record as to who on this call gave this indication to Dr. Michler or what their motivations were. Lack of consistency regarding a nondiscriminatory rationale can be fatal to a motion for summary judgment. *See Graziadio* v. *Culinary Inst. of Am.,* 817 F.3d 415, 431 (2d Cir. 2016) ("The weakness of the evidence supporting the defendant's explanation, considered in conjunction with the very close temporal proximity between [plaintiff's] leave

24

and her termination, would ... permit the conclusion that defendants' decision to fire [plaintiff] arose ... from her much-contested attempt to take ... leave."); *Zann Kwan*, 737 F.3d at 847 ("[A] plaintiff may rely on evidence comprising her *prima facie* case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment[.]").

Defendant argues that whoever made the decision, there is nothing in the record to suggest that Dr. Michler, Dr. Ozuah, or Mr. Panczner had discriminatory motives. (Def. Reply 7). What is more, Defendant argues that regardless of whether the ultimate decisionmaker was Dr. Michler, the record is clear that Plaintiff's February 2016 arrest led to her July 2016 termination. Defendant points out that Plaintiff was first suspended with pay immediately upon her arrest; that the paid leave was converted to unpaid leave on June 29, 2016; and that the termination only came after Plaintiff requested that Defendant give her clarity on her future there. (Def. Br. 11-15). Defendant cites *Iverson* v. *Verizon Comm'ns*, No. 08 Civ. 8873 (SAS), 2009 WL 3334796 (S.D.N.Y. Oct. 13, 2009), for "the proposition that temporal proximity between the disclosure of disability and termination [] is not enough to show that [a defendant's] reasons for termination were a pretext for discrimination," where the plaintiff was suspended prior to the request for disability. (*Id.* at 13).

The Court agrees that substantial evidence in the record supports Defendant's proffered nondiscriminatory reason for Plaintiff's termination. However, at this stage in the proceedings, "Plaintiff benefit[s] from the drawing

of every conceivable inference in her favor." *Lyman*, 2014 WL 3417394, at *23.

Accordingly, the Court notes that Plaintiff's criminal counsel, Mr. Myers, first

reported to Mr. Panczner that Plaintiff wished to take disability on June 20,

2016. (Panczner Decl., Ex. 9). Plaintiff was not placed on unpaid leave until

after this phone call, undercutting Defendant's argument that there was a

steady escalation of punishments unrelated to Plaintiff's termination. After

being placed on unpaid leave, Plaintiff again referenced her disability in the

June 30 email to Dr. Mehta. (*Id.* at Ex. 11). This letter was immediately

followed by the July 1 telephone call among Defendant's staff, which

apparently provided Dr. Michler with newfound authority to terminate Plaintiff.

Drawing inferences in Plaintiff's favor, the pattern appears to be that Plaintiff's

requests for accommodation were shortly followed by negative decisions

regarding her employment. These rapid decisions contrast with the deliberate

approach that Defendant had taken in the months prior when dealing with

Plaintiff's arrest and criminal proceedings. While Defendant notes that this

can be explained by Defendant losing patience with the lack of exculpatory

evidence that Plaintiff had promised to produce, and Plaintiff's own request for

clarity on her future (*see* Def. Br. 13-14), the Court cannot draw such

inferences in Defendant's favor at this stage.

The Court agrees that Plaintiff's arrest and the publicity regarding it

played a clear role in Defendant's termination decision, but "the plaintiff is not

required to show that the employer's proffered reasons were false or played no

role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Holcomb*, 521 F.3d at 138. Given the imprecision regarding the ultimate decisionmaker with respect to Plaintiff's termination, the shift in Defendant's conduct following Plaintiff's request for medical leave, and the focus on the fact-intensive question of motive, the Court concludes that triable issues remain as to whether Plaintiff's disability was a motivating factor in Defendant's ultimate decision to terminate her. While the Court readily accepts that a jury may find Defendant's proffered explanation for Plaintiff's termination to be more compelling, it does not agree that the record supports no finding of pretext. Plaintiff's narrative that Defendant remained willing to work with her until she and her counsel began discussing a medical leave has enough support in the record that a reasonable jury could accept it. Accordingly, summary judgment is denied with respect to Plaintiff's claim for disability discrimination under the ADA and the NYSHRL, and, by extension, under the less stringent standards of the NYCHRL.

### 2. Summary Judgment Is Denied as to Plaintiff's Retaliation Claims

#### a. Plaintiff Requested an Accommodation for Her Disability

While the tests for discrimination and retaliation are largely overlapping, the parties dispute whether the conversation between Mr. Myers and Mr. Panczner constitutes a request for accommodation of her disability. (Def.

27

Br. 8-9; Pl. Opp. 15-16).  The Court finds that it does, and was thus a protected activity under the ADA.  As Plaintiff notes, Dr. Michler testified that he considered Plaintiff's communication through her lawyer a request for accommodation.  (*See* Pl. Opp. 15 (citing Michler Dep. 149:11-16 ("Q. When you see here that Dr. Wellner says that she wants to go out on short-term disability, do you consider that to be a request for an accommodation? A. Yes."))).

Furthermore, Plaintiff correctly notes that an employer's obligation to accommodate disabilities exists even absent a direct request from an employee. (Pl. Opp. 15-16).  The Second Circuit has held that "an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious — which is to say, if the employer knew or reasonably should have known that the employee was disabled."  *Brady* v. *Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008).  Numerous cases have held that an employer's perception of disability can trigger liability for failure to accommodate under the ADA.  *See, e.g.*, *Glaser* v. *Gap Inc.*, 994 F. Supp. 2d 569, 578 (S.D.N.Y. 2014) ("Under the ADA, an employer need not know the exact diagnosis to be liable for discrimination on the basis of a disability; liability may be premised on the employer's perception, regardless of whether it is accurate, if the employer relies on such perception to engage in a prohibited act.").  Here, there is no question that Montefiore was aware of Plaintiff's mental health problems at the time of her termination, and therefore, to the extent her termination was

28

retaliation for her request for accommodation, it violates the ADA, the NYSHRL, and the NYCHRL.

### b. Genuine Disputes of Material Fact Exist Concerning Plaintiff's Retaliation Claim Arising from Her Discharge

Plaintiff's disability discrimination claim addresses the termination, which she alleges arose from her request for medical leave. To the extent her retaliation claim arises from the same conduct, summary judgment is denied for the same reasons explained above.

### 3. A Failure to Engage in an Interactive Process Is Not an Independent Basis for Liability

In her opposition, Plaintiff argues that Defendant's failure to engage with her in an interactive process to accommodate her disability prior to her termination demonstrates Defendant's violation of the ADA, the NYSHRL, and the NYCHRL. (Pl. Opp. 17-18). As Defendant notes, Plaintiff appears to suggest, erroneously, that failure to engage in an interactive process constitutes an independent claim for relief. (Def. Reply 2-3).

"[F]ailure to 'engage in an interactive process' … does not constitute an independent violation of the ADA." *Nazario* v. *Promed Pers. Servs. NY Inc.*, No. 15 Civ. 6989 (LGS), 2017 WL 2664202, at *7 (S.D.N.Y. June 19, 2017) (citing *Stevens* v. *Rite Aid Corp.*, 851 F.3d 224, 231 (2d Cir.), *cert. denied*, 138 S. Ct. 359 (2017)); *see also Jacobsen* v. *N.Y.C. Health & Hosps. Corp.*, 22 N.Y.3d 824, 838 (2014) ("[T]o the extent [prior lower court decisions] can be interpreted as implying that a good faith interactive process is an independent

29

element of the disability discrimination analysis under either the State or City HRL which, if lacking, automatically compels … a verdict in the employee's favor, we reject that notion.").

It is true that a court can consider a defendant's failure to engage in an interactive process as evidence that the defendant engaged in discrimination or retaliation. *See, e.g.*, *Jacobsen*, 22 N.Y.3d at 827 (observing that the NYSHRL and the NYCHRL generally preclude summary judgment in favor of an employer where the employer has failed to demonstrate that it responded to a disabled employee's request for a particular accommodation by engaging in a good-faith interactive process regarding the feasibility of that accommodation). Such failure, however, provides no independent basis for liability.

### 4. Summary Judgment Is Denied with Respect to Plaintiff's Claim for Economic Damages

Finally, Defendant argues that Plaintiff is not entitled to economic damages, as she has been and remains unable to work due to the PTSD that she suffered resulting from her arrest. (Def. Br. 15-17). Defendant points to Plaintiff's statements to the Social Security Administration and her continued statements that she is unable to return to work. Defendant cites *Saulpaugh* v. *Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993), in which the Second Circuit upheld a district court's calculation of damages that excluded back pay during the time in which the plaintiff was disabled and unable to work. (Def.

Br. 18).  The Court does not agree that Plaintiff is foreclosed from arguing for economic damages.

Defendant's argument fails for largely the same reason that its analogous argument regarding Plaintiff's ability to perform the duties of her job failed: Plaintiff's requests for disability benefits postdate her termination, and her contention remains that her condition was exacerbated by her termination and Defendant's failure to accommodate her disability.  *Saulpaugh* involved a bench trial, in which the Circuit upheld the district court's factual findings regarding the plaintiff's disability and inability to work.  *See generally Saulpaugh* v. *Monroe Cmty. Hosp.*, 4 F.3d 134 (2d Cir. 1993).  As in its discussion of Plaintiff's ability to perform the functions of her job, the Court finds that *Cleveland* necessitates allowing Plaintiff to reconcile her statements regarding her disability with her current request for economic damages.  While a jury may conclude that Plaintiff's disability forecloses a claim for economic damages, the Court cannot do so as a matter of law.

## CONCLUSION

The Court observes that had Plaintiff been terminated immediately after her arrest and the publication of the news stories, Defendant would almost certainly face no liability for disability discrimination or retaliation.  In this telling, which a jury may very well conclude is the correct one, Defendant's mistake would not be discrimination towards Plaintiff, but excessive generosity in providing her time to clear her name.  Nevertheless, the Court cannot

conclude that no reasonable jury could find Plaintiff's allegations of impermissible discrimination and retaliation to be true. For the reasons stated in this Opinion, Defendant's motion for summary judgment is DENIED with respect to the claims for disability discrimination and retaliation under the ADA, the NYSHRL, and the NYCHRL. Defendant's motion for summary judgment is GRANTED with respect to Plaintiff's NYSHRL § 296(16) claim for wrongful termination on the basis of her arrest record

The Clerk of Court is directed to terminate the motion at docket entry 43. The parties are ORDERED to submit a letter to the Court, on or before **September 20, 2019**, to advise the Court of their availability for trial in the third quarter of 2020, or alternatively, if they wish to proceed with a method of alternative dispute resolution.

SO ORDERED.

Dated: August 29, 2019
      New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge